ESTATE OF Judith H. SWARTZ,
Appellant,

v.

METROPOLITAN PROPERTY
& CASUALTY COMPANY,
Appellee.

No. 96–CA–0664–MR.

Court of Appeals of Kentucky.

Aug. 1, 1997.

Robert L. Heleringer, Louisville, for Appellant.

Christopher S. Burnside, Robert L. Steinmetz, Louisville, for Appellee.

Before WILHOIT, C.J., and ABRAMSON and DYCHE, JJ.

*OPINION*

ABRAMSON, Judge:

The sole issue presented in this case of first impression is whether an insured

may aggregate or "stack" underinsured motorist coverage under a policy which, while ostensibly charging a single premium for that protection, in fact bases the premium on whether the policy covers a single vehicle or multiple vehicles. The Estate of Judith H. Swartz (the "Estate") challenges a judgment of the Jefferson Circuit Court concluding that her insurer, Metropolitan Property & Casualty Company ("Metropolitan"), is not required to stack underinsured motorist (UIM) benefits for the three vehicles covered by her automobile insurance policy because she had been notified that the premium for such coverage was on a "per policy" not a "per vehicle" basis. Having examined the insurance policy in question in light of Kentucky cases on related stacking questions and case law from other jurisdictions that have confronted the single premium issue, we are convinced that, despite Metropolitan's characterization of its UIM premium as a single charge for a single coverage, the reality is that Swartz purchased more than a single item of UIM coverage. Under a two-tier rate schedule which almost doubled the UIM premium where two or more vehicles were insured, Mrs. Swartz and her husband in fact purchased two items of UIM coverage. Kentucky law regarding stacking of UIM coverage requires the conclusion that an insured is entitled to the number of coverages actually purchased regardless of how the premium is presented to the insured. Accordingly, we hold that the Estate is entitled to two items of UIM benefits or $50,000 in total coverage from Metropolitan.

The facts essential to our review of this case were stipulated to the trial judge. On or about July 20, 1993, Judith Swartz signed a Kentucky Automobile Insurance Application and submitted it to agent Virgle W. Tidrow, Jr., for submission to Metropolitan. At the time of application, Mrs. Swartz and her husband Donald owned two vehicles that were to be covered under the policy. In his deposition, Donald testified that Judith Swartz took care of the parties' financial affairs, including insurance matters. Although he was present at the meeting with Tidrow to complete the application, Donald stated that he neither participated in the discussion nor remembers signing the application.

Metropolitan issued a policy which took effect August 5, 1993, providing for regular six-month renewals. In December 1994, the Swartzes acquired a 1993 Chevrolet S–10 pickup truck which was added to the policy about December 27, 1994. At that time Metropolitan charged the Swartzes three separate premiums for UIM coverage, $6.00 on each covered vehicle for a total of $18.00. The separate premiums were reflected on the Declarations Page sent to the Swartzes. Prior to the February 5, 1995 six-month policy renewal, Metropolitan sent the Swartzes a renewal package that included an "Important Notice" titled CHANGES IN YOUR AUTO INSURANCE COVERAGE which set out the following paragraphs pertinent to this appeal:

> You will find an important change on the Declarations Page of your automobile insurance policy. It concerns your Uninsured Motorists Bodily Injury (UMBI) and Underinsured Motorists Bodily Injury (UIMBI) insurance protections only. **Until this change, you were charged per vehicle for these coverages. Now you will be charged a per policy amount.** Your Declarations Page now shows one amount for UMBI coverage and one amount for UIMBI coverage. These amounts represent the total limit of your policy's coverage, regardless of the number of vehicles listed on the policy. Your cost will be based on how much coverage you select and on whether or not you choose to insure more than one automobile. Therefore, take a look at your current UMBI and UIMBI limits to be sure the amount of coverage is right for you.

> As an example of how your UMBI and UIMBI coverages work, if a covered auto is hit and Uninsured Motorists or Underinsured Motorists coverage is applicable, the amount of available UMBI and UIMBI coverage will not exceed the figure displayed on your Declarations Page.

The new Declarations Page reflected a premium of $10.00 for the Swartzes' UIM coverage of $25,000 per person/$50,000 per accident.

Judith Swartz was killed on April 26, 1995, while driving the Chevrolet S–10 pickup truck listed as a covered vehicle on the policy with Metropolitan. The accident was caused by the negligence of Micah Harris, the driver of the other vehicle, who was insured by Kentucky Farm Bureau Mutual Insurance Company. Farm Bureau paid the full amount of Harris's policy limit for liability ($25,000) to the Estate. The Estate subsequently made a demand upon Metropolitan for $75,000 in UIM benefits, claiming entitlement to stack the $25,000 policy limit for each of the three covered vehicles. In June 1995, Metropolitan agreed to pay the sum of $25,000 in UIM benefits which the Estate accepted in July 1995. Thereafter, on July 24, 1995, the Estate instituted a proceeding for a declaration that Metropolitan is required to stack UIM benefits for each of the three vehicles on the Swartzes' policy.

The trial judge denied the Estate's motion for a declaratory judgment concluding that because there was no way to determine the Swartzes' reasonable expectations under the policy, the policy language must be deemed controlling. He further held that Metropolitan had fully met its responsibilities under the policy by paying the stated UIM limit of $25,000. In this appeal, the Estate advances three arguments in support of its contention that stacking is required: 1) that the Swartzes had a reasonable expectation of the right to stacked coverage under their policy; 2) that the trial judge erred in concluding that the Swartzes had not paid separate premiums for UIM protection; and 3) that it is contrary to the public policy of this Commonwealth to deny an insured all the UIM protection he or she has actually purchased.

As noted by the Kentucky Supreme Court in *State Farm Mutual Automobile Insurance Company v. Mattox*, Ky., 862 S.W.2d 325 (1993), appellate decisions on issues pertaining to stacking are "not written on a clean slate." Thus, our analysis of the issue in the instant case is necessarily confined by the framework of statutory construction and policy considerations established in a line of Kentucky cases commencing with *Meridian Mutual Insurance Company v. Siddons*, Ky., 451 S.W.2d 831 (1970), and *Ohio Casualty*

*Insurance Company v. Stanfield*, Ky., 581 S.W.2d 555 (1979). The import of these early decisions was addressed by the Supreme Court in *Hamilton v. Allstate Insurance Company*, Ky., 789 S.W.2d 751, 753–54 (1990), in concluding that anti-stacking provisions are contrary to public policy:

> From the foregoing authorities [*Siddons* and *Stanfield*], it is clear that this Court has recognized an inherent difference between liability insurance and uninsured motorist insurance coverage and regarded the latter as personal to the insured. Our interpretation has been based on the language of KRS 304.20–020 and its predecessor as well as the doctrine of reasonable expectations, the continued viability of which was recently underscored in *Simon v. Continental Ins. Co.*, Ky., 724 S.W.2d 210 (1986). Under the doctrine of reasonable expectations, we have held that *when one has bought and paid for an item of insurance coverage, he may reasonably expect it to be provided.*

> \* \* \* \* \* \*

> Kentucky law requires an insurance carrier to offer uninsured motorist coverage with every policy insuring a motor vehicle. KRS 304.20–020. Decisional law declares such coverage to be applicable whether the insured who is injured by an uninsured motorist is driving an insured vehicle, riding as a passenger in another vehicle, or traveling as a pedestrian. *Siddons, supra*, 451 S.W.2d at 832 n. 1. In short, uninsured motorist coverage applies whenever an insured person would be entitled to recover damages but for the uninsured status of the negligent motorist.

(emphasis added). Notably, the insurance policy in *Hamilton* was "a so-called 'plain language' policy" which clearly provided that the insured, when injured in an auto other than her own, could "choose any single auto shown on the declarations page and the coverage limits applicable to that auto will apply." *Id.* at 752. The Court agreed that the policy language prohibiting stacking was unambiguous but concluded that it was unenforceable because it deprived the insured of coverage she had actually purchased.

More recently, the Court in *Allstate Insurance Company v. Dicke,* Ky., 862 S.W.2d 327 (1993), held that the public policy considerations underpinning the right to stack uninsured motorist coverage are equally applicable to underinsured motorist coverage. The *Dicke* Court summarized prior precedent as follows: "We have consistently held that when separate items of 'personal' insurance are bought and paid for, there is a reasonable expectation that the coverage will be provided. As such, we have held that it is contrary to public policy for it to be denied." *Id.* at 329. Mindful of the fact that we must examine the single-premium issue from the perspective of these previous stacking cases, we turn to the arguments pressed for reversal.

## I. THE TRIAL JUDGE ERRED IN HOLDING THAT THE POLICY LANGUAGE CONTROLLED BECAUSE THE REASONABLE EXPECTATIONS OF THE SWARTZES COULD NOT BE ASCERTAINED.

In the order denying the Estate's request for a declaration of rights, the trial judge focused upon the impossibility of ascertaining the expectations of the insureds due to the death of Judith Swartz and the testimony of Donald Swartz that he did not read the policy, did not participate in the discussions with the agent, and did not recall any particular discussion with his wife regarding UIM coverage. Mr. Swartz also testified that he had no knowledge of having received the "Important Notice" of the change in the UIM premium and that no automobile insurance papers could be found after the death of Judith Swartz. Without any evidence of the insureds' actual expectations, the trial judge concluded that the policy language regarding UIM coverage must be controlling. Although such a determination might be upheld in the context of other insurance policy issues, we are unable to reconcile it with the view of "reasonable expectations" for purposes of UIM coverage fashioned by the Kentucky Supreme Court.

The concept of reasonable expectations with respect to an insured's purchase of UIM coverage appears to have little relation to the purchaser's subjective thought process. As Justice Stephenson observes in his dissenting opinion in *Stanfield,* 581 S.W.2d at 560: "I have read Professor Keeton's principle of *honoring reasonable expectations .... The principle is based on the premise that policy language will be construed as laymen would understand it.*" (emphasis added).

While occasionally giving a nod to the insured's subjective expectations, the Kentucky cases have been decided on the basis of an objective analysis of separate policy items and the premiums charged for each. In reality, the deciding factor is not what the individual insured knew, read, or expected, but what he or she actually paid for UIM coverage and the manner in which the insurance company calculated and billed the premium. Thus, in *Chaffin v. Kentucky Farm Bureau Insurance Companies,* Ky., 789 S.W.2d 754, 756 (1990), the Court stated that "an insured who pays separate premiums for multiple items of the same coverage has a reasonable expectation that such coverage will be afforded...." The *Chaffin* Court did not ascertain the insured's expectations; it attributed expectations to her based on what was reasonable, given all the facts. Any doubt about whether there is a need to determine what a particular insured actually expected is erased by a careful reading of *Dicke.* In that case, as in this case, the insured was deceased and no effort was made to ascertain either his or his widow's expectations. As in *Chaffin,* the Court simply stated that a reasonable expectation of multiple coverage exists, where "separate items of 'personal' insurance are bought and paid for...." *Dicke,* 862 S.W.2d at 329.

Aside from the implicit rejection of an insured's subjective expectations in *Chaffin* and *Dicke,* we note that such an approach would lead to confusion and anomalous results. Two insureds injured in the same accident could have different individual expectations as to the underinsured motorist coverage available under their policy. In a typical husband-wife scenario, the wife could expect two items of coverage because the couple owned two vehicles. If the husband thought that he was only entitled to one item of coverage, the same contract would have

two very different constructions. Clearly, a doctrine which produces such inconsistent results with respect to the same contract has not and should not be adopted.

■ Because an insured's reasonable expectations with respect to UIM coverage appear to arise as a matter of law, we are convinced that the trial judge erred in concluding that given the impossibility of ascertaining the Swartzes' actual expectations, the policy language prevailed. Under controlling Kentucky law, the proper area of inquiry is what the Swartzes could reasonably expect in light of what they actually paid for, not what they personally expected or whether those expectations could be ascertained.

## II. ALTHOUGH METROPOLITAN OSTENSIBLY CHARGED A SINGLE PREMIUM FOR UIM COVERAGE, IN REALITY THE SWARTZES PURCHASED TWO ITEMS OF PERSONAL COVERAGE.

As previously noted, it is the payment of separate premiums for multiple items of the same "personal" insurance coverage that gives rise to the concept of stacking. The Court in *Mattox,* 862 S.W.2d at 326, reiterated the rationale at work in previous stacking cases as follows: "In *Chaffin,* we explained that with insurance which is personal to the insured *for which a separate premium is paid,* there arises a reasonable expectation of coverage, the exclusion of which is prohibited by public policy." (emphasis added). Therefore, the critical inquiry in any stacking case, and the key to resolving this appeal, is whether Metropolitan charged a single premium for UIM coverage or whether it charged separate premiums in the guise of one premium.

The evidence reflects that until February 1995, the Swartzes paid $18 for UIM coverage, $6 on each vehicle. After the February 1995 revision, they paid $10 for UIM coverage. A Vice President and Chief Actuary for Metropolitan testified that the $10 rate was for individuals with two or more vehicles. If the Swartzes had only insured one vehicle the premium would have been $6.00. The Metropolitan witness further testified that UIM coverage on a single-vehicle policy is "discounted" to $6.00 because multi-vehicle households have a higher frequency of potential losses under UIM and uninsured coverage than single-vehicle households. Metropolitan summarized its position as follows:

Metropolitan calculated the premium on a "per policy" basis. In determining the premium rate to be charged for UIM coverage on multi-vehicle policies in Kentucky, Metropolitan *did not* calculate the premium on a "per vehicle" basis. The premium reflected on the Swartz policy *is not* a sum of lesser "per vehicle" premiums, nor is it a product of the number of vehicles owned by the insured and any "per vehicle" rate.... Metropolitan calculated the premium that it would need to charge on such a policy for $25,000 per person/$50,000 per accident coverage, regardless of whether the Swartzes owned two vehicles, three vehicles, four vehicles or five vehicles....

Appellee's Brief at 7 (citations omitted). Conspicuously absent from this last statement is any reference to a one-vehicle scenario. Metropolitan argues that the fact that the premium would have been $6 if a single vehicle were insured should be "irrelevant." *Id.* at 5. The Estate counters that the "Important Notice" clearly states that the premium will be based on the amount of coverage chosen "and whether or not you choose to insure *more than one automobile.*"

The decisions of courts in other jurisdictions on similar single-premium issues offer some guidance in resolving this question. For example, in *Kramer v. Allstate Insurance Company,* 909 P.2d 128, 129 (Okla.Ct. App.1994), the Oklahoma Court of Appeals resolved an almost identical issue on the following basis:

[a]s to the first two vehicles covered, *this is not a 'single premium' case, because Kramer paid a higher premium for the same amount of coverage than he would have paid had he insured only a single vehicle* on his policy. However, as to a third vehicle, no additional premium was charged or paid. Allstate used a policy with two premium rate schedules; a single car schedule and a multi-car rate schedule. This is a two premium policy and it can be

stacked. Note that *under this two premium schedule, the recovery can only be two times the uninsured coverage regardless of how many more vehicles are insured under the policy.*

Based on the summary judgment record below, we conclude that *by charging nearly twice as much* for UM coverage on multiple-vehicle policies as it did for single-vehicle policies, *Allstate created the reasonable contractual expectation that the amount of UM coverage on a multiple-vehicle policy would be correspondingly greater than the amount of coverage on a single-vehicle policy.* [Citations omitted.] Allstate cannot defeat that expectation of greater coverage by policy language which purports to limit such coverage.

(emphasis supplied). Similarly, in *Harrison v. Allstate Insurance Company,* 662 So.2d 1092, 1094 (Miss.1995), the Supreme Court of Mississippi offered the following rationale in deciding that stacking was available where separate premiums were charged under the guise of one lump sum:

> Although the policy language precluding stacking is clear, we find that Harrison was actually charged separate premiums for his two vehicles under the guise of one lump sum on his declaration sheet. Because the premium for two cars is $24 more than the premium for one car, [$52.40 vs. $28.40], Allstate clearly charges an additional premium for the second car. We find this case factually similar to *[Government Employees Ins. Co. v.] Brown* [446 So.2d 1002 (Miss.1984)], the only difference being that Allstate in the present case charged separate uninsured motorist premiums by lumping them together on the declaration sheet.

██ Admittedly, courts in other jurisdictions have refused to look behind the single premium stated in the policy. *See, e.g., Cardoso v. Nationwide Mutual Insurance Company,* 659 A.2d 1097 (R.I.1995). However, we believe that the above-quoted authorities provide the better-reasoned approach and are more in keeping with the well-settled stacking philosophy found in the case law of this Commonwealth. Furthermore, we find little, if anything, to factually or legally distinguish the Oklahoma and Mississippi cases from the situation facing the Swartzes. Because Metropolitan charged almost twice as much for UIM coverage in a multi-vehicle policy as for identical coverage in a single-vehicle policy, we are of the opinion that Metropolitan actually charged separate premiums in the guise of one lump sum. Language contained in the "Important Notice" Metropolitan included in the Swartzes' renewal policy supports this conclusion, stating that "[y]our cost will be based on how much coverage you select and *on whether or not you choose to insure more than one automobile.*" (emphasis added). In predicting how the Mississippi Supreme Court would treat a similar issue, the United States District Court for the Northern District of Mississippi made the following observation in *Pride v. General Agents Insurance Company of America, Inc.,* 697 F.Supp. 1417, 1421 (N.D.Miss.1988):

> [T]his court can find no reason for allowing an insurance company to do by the use of a single lump-sum premium what it could not do if it broke the lump sum charge down into separate, per vehicle premiums. In other words, if the Mississippi Supreme Court intends to make sure that the insured gets all of the coverage that he had paid for, that court surely would not allow insurance companies to defeat that intention by the simple expedient of combining the costs of several U.M. coverages and stating them as a single premium. However, the presumption created in *Bridges* and reiterated in *Brown* may not be relied upon where there is a single premium, so the insured would be required to prove that the single premium charged was actually the sum of the premiums which would be due for separate U.M. coverages....

Like the court in *Pride,* we would emphasize that an insurance company could, through the calculation and adoption of an actuarially appropriate premium, charge an insured a single UIM fee *regardless of the number of vehicles covered under the policy,* entitling that insured to only one unit of UIM protection. *See, e.g., Coker v. Allstate Insurance Company,* 877 P.2d 1175 (Okla.Ct.App. 1994). In this instance, however, the Estate

has satisfied its burden of proving that the Swartzes purchased two units of UIM protection by demonstrating that the UIM premium Metropolitan charged on a multi-vehicle policy is almost twice that charged on a single-vehicle policy.

III. *PUBLIC POLICY REQUIRES STACKING WHERE THE EVIDENCE REFLECTS THAT, ALTHOUGH STATED AS A SINGLE PREMIUM, THE INSURED IS PAYING FOR MULTIPLE COVERAGES.*

Metropolitan argues that in ordering the stacking of coverages, the Kentucky courts have always focused on the number of separate premiums, not the number of vehicles covered.

Counting vehicles, however, is logically inconsistent with Kentucky authority authorizing stacking. The court must determine the number of coverages purchased by the insured, based upon the information available to the insured. Historically, separate premiums have been assigned to the separate vehicles on the declarations pages; but courts have always counted *premiums* and not *vehicles.*

Appellee's Brief at 13. Metropolitan's explanation of Kentucky public policy in this field is too simplistic. A careful consideration of the Kentucky cases previously discussed reveals that the public policy underlying each of them is the necessity of giving the insured the full benefit of what he or she paid for. In the above-quoted portion of its Brief, Metropolitan acknowledges that the court must determine the number of coverages purchased but qualifies it with the language "based upon the information available to the insured." Leaving the insured uninformed by quoting a single premium and not explaining that the same UIM coverage in a single-vehicle policy would be 40% less does not alter the insurance company's obligation in this Commonwealth. Public policy as enunciated in a line of cases beginning with *Siddons* requires the conclusion that the Swartzes purchased two units of UIM coverage and the Estate is now entitled to stack them for a total of $50,000 in coverage. Metropolitan is not responsible for a third unit of coverage because as in *Kramer v. Allstate Insurance Company, supra,* there is no increase in premium for each additional coverage beyond the first two. This result complies with the dictates of Kentucky case law outlining public policy in this area by giving the Estate exactly what the Swartzes paid for—no more and no less.

The judgment of the Jefferson Circuit Court is reversed and the case remanded for entry of an order declaring the Estate's entitlement to a second unit of UIM coverage.

All concur.