Vernal ADKINS, Individually and as Administrator of the Estate of Kathleen Adkins, Appellant,

v.

KENTUCKY NATIONAL INSURANCE COMPANY and Hon. Steven Combs, Judge, Appellees.

No. 2005–CA–002213–MR.

Court of Appeals of Kentucky.

April 6, 2007.

Kristie M. Goff, Pikeville, KY, for appellant.

Bayard V. Collier, Julie Ann Sharp, Pikeville, KY, for appellee, Kentucky National Insurance Company.

Before LAMBERT and STUMBO, Judges; BUCKINGHAM,[1] Senior Judge.

*OPINION*

STUMBO, Judge.

Vernal Adkins (hereinafter referred to as "Adkins"), individually and as administrator of the estate of Kathleen Adkins, appeals from a summary judgment of the Pike Circuit Court. Adkins maintains that his action to recover aggregate or "stacked" Uninsured Motorist Coverage ("UM coverage") payments from Kentucky National Insurance Company raised genuine issues of material fact sufficient to

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

overcome Kentucky National's motion for summary judgment. Specifically, he argues that Kentucky National improperly sought to unilaterally amend an insurance contract for the purpose of preventing Adkins from stacking three units of UM coverage. For the reasons stated below, we affirm the summary judgment.

On October 1, 2001, Kathleen Adkins received fatal injuries in a tragic automobile accident. The vehicle she was driving was owned by her daughter and was insured by a policy with State Farm Insurance Company. Kathleen and her husband, Vernal Adkins, had insurance coverage via a policy issued by Kentucky National. The at-fault driver, Norman Thacker, was not insured at the time of the accident.

The Adkinses' Kentucky National policy was issued on August 13, 1998. At the time of issuance, it provided insurance coverage for two vehicles. Sometime thereafter, an additional vehicle was added to the coverage. After the third vehicle was added, the Adkinses began paying three separate premiums for UM coverage, representing one unit of coverage per vehicle. Each UM coverage premium cost $32 for $50,000 of UM coverage, for a total of $96 in premiums representing $150,000 of stacked coverage.

Prior to the policy's renewal date of August 13, 2001, Kentucky National mailed to the Adkinses renewal materials which included a written notice of changes to their coverage. Specifically, Kentucky National stated that it would begin charging a single UM premium for the three units of coverage on the three vehicles, rather than three distinct premiums as had previously been done. The apparent purpose of this change—though not stated in the notice—was to prevent the stacking of the three units of UM coverage. The Adkinses accepted the new coverage and be-gan paying premiums according to its terms.

After the death of Kathleen Adkins, and because the at-fault driver was not insured, Kathleen's estate sought payment from Kentucky National of $150,000 representing 3 stacked units of $50,000 UM coverage. Relying on the new policy provisions in effect at the time of Kathleen's death, Kentucky National offered to pay a non-aggregate or "non-stacked" coverage limit of $50,000. Rejecting the offer, Vernal Adkins, individually and as administrator of Kathleen's estate, filed the instant action in Pike Circuit Court. After the litigation commenced, Kentucky National paid to Adkins the sum of $50,000 to which the parties agreed Adkins was at least minimally entitled, and discovery was undertaken on the stacking issues.

Kentucky National subsequently filed a motion for summary judgment, followed by a renewed motion for summary judgment. As a basis for the motion, Kentucky National argued that it gave the Adkinses proper notice of the policy change affecting the UM coverage, that they accepted the change when they renewed the policy, and that Adkins was entitled to one unit of UM coverage or $50,000. In sum, it maintained that no genuine issue of fact remained for adjudication and that it was entitled to a summary judgment as a matter of law. A hearing on the motion was conducted on September 30, 2005, after which the circuit court granted the motion and rendered a summary judgment. This appeal followed.

█ Adkins now argues that the circuit court erred in granting Kentucky National's motion for summary judgment. He maintains that the Adkinses were not notified that Kentucky National intended to begin charging a single premium for three units of UM coverage, and that they did

not consent to said change. Adkins also argues that *Hamilton v. Allstate,* 789 S.W.2d 751 (Ky.1990) expressly bars any provision in an automobile insurance policy prohibiting stacking. He directs our attention to case law which he claims holds that *underinsured* motorist coverage may be stacked even where a *single premium is charged,* and argues that this principle is equally applicable to UM coverage. Lastly, Adkins maintains that the policy change is void as contrary to the case law and public policy, and asserts that he had a reasonable expectation of aggregate (i.e., "stackable") coverage. He seeks an order reversing the summary judgment and remanding the matter for further adjudication.

We have closely examined the written arguments, the record and the law, and having heard the parties' oral arguments, we find no basis to overturn the summary judgment on appeal. Adkins' argument centers on his claim that the Adkinses were not given notice of Kentucky National's intention to change the terms of coverage resulting in their payment of a single premium rather than three distinct premiums for three units of UM coverage. Subsumed in this argument is Adkins' assertion that the Adkinses never consented to the policy change.

This argument is refuted by the record, which contains the notification of change in coverage mailed to the Adkinses as well as the "new" policy declaration which became effectual on August 13, 2001. Adkins admits as much in his written argument, where he states that "... Kentucky National sent a copy of the 'altered' policy to the Adkinses [sic], *which indicated that Kentucky National had changed the way they calculated the premium to be paid for UM coverage.*"[2] (Emphasis added).

Though Adkins maintains that the Adkinses were not notified of the change in coverage, the corpus of his argument on this issue is that they were not told of the *ramifications* of that change. This too, however, is refuted by the record. Kentucky National's notice to the Adkinses contained the following notice:

> The enclosed renewal contains important changes in Uninsured Motorist (UM) and Underinsured Motorist (UIM) coverages. In the past, premiums for these coverages have been charged on a per-vehicle basis. You paid a separate premium for each vehicle on the policy and coverage was determined by adding the number of vehicles and multiplying this amount by the limits of UM/UIM coverage. The amount of coverage would vary by the number of vehicles insured on the policy. On the renewal date specified on the declarations page of your renewal policy, we have revised this coverage. Only one charge is made for this coverage per policy and coverage *is limited to the coverage limits shown on the declarations page.* If you have any questions or would like to discuss higher limits of coverage, please contact your agent.[3] (Emphasis added).

The declarations page referenced in the notice, and which is contained in the record as Exhibit 2, shows the limit of UM coverage at $50,000 per person. This language is clear and unambiguous, and was openly referenced by Kentucky National in Exhibit 3 styled "IMPORTANT NOTICE TO OUR POLICY HOLDERS." A comparison of the 2000 Declarations page and the 2001 Declarations page reveals that in 2000, the Adkinses were charged the sum of $32.00 per vehicle for UM coverage listed on separate lines, while in 2001,

---

2. Adkins' brief at page 6.

3. Exhibit 3.

there was a single charge of $52.00 for a single unit of UM coverage listed below the totals for premiums charged per auto. Furthermore, the endorsement page provided the Adkinses, and which is contained in the record as Exhibit 4, stated that "[t]he limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages ... sustained by any one person in any one accident.... This is the most we will pay regardless of the number of ... [v]ehicles shown in the Declarations...." The record supports the circuit court's conclusion that the Adkinses received notice of the change in UM coverage and that they consented to the change by accepting the new policy and tendering the premiums.

■ More important than the notice issue, however, is the underlying question of whether UM coverage may be stacked where a single UM premium is charged for multiple vehicles, and where the premium is actuarial and not based on the number of vehicles covered. This is an issue of first impression, and must be answered in the negative.

In *Meridian Mutual Insurance Co. v. Siddons*, 451 S.W.2d 831 (Ky.1970), the Kentucky Supreme Court first held that stacking of UM coverage by the named insured is permitted where there are separate policies for each vehicle insured and where the named insured has not rejected the coverage in writing. A number of decisions followed which addressed the scope and application of KRS 304.20–020 (requiring, unless waived, UM coverage as a part of every automobile liability policy) and the stacking of that coverage where the injured party was availed of multiple UM coverage units. *See generally, Hamilton v. Allstate Ins. Co.*, 789 S.W.2d 751 (Ky.1990) (insurer barred from including policy language limiting stacking); *Chaffin*

*v. Kentucky Farm Bureau Ins. Co.*, 789 S.W.2d 754 (Ky.1990) (anti-stacking provision disallowed); and, *Ohio Casualty Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky.1979) (doctrine of reasonable expectations upheld, and employee disallowed from stacking employer's coverage).

At the same time these issues were being addressed, questions relating to aggregate *underinsured ("UIM")* coverage also were being resolved. Most notably for our purposes, the Kentucky Supreme Court held that an insured had no reasonable expectation of aggregate or stacked UIM coverage if a single premium is paid for two or more units of coverage, where the premium is not based on the number of vehicles covered. *Marcum v. Rice*, 987 S.W.2d 789 (Ky.1999). *See also, Estate of Swartz v. Metropolitan Property & Casualty Company*, 949 S.W.2d 72 (Ky.App. 1997). As the parties are well aware, the Kentucky Supreme Court has also held that the difference between UM and UIM coverage is more illusory than real. *Allstate Insurance Company v. Dicke*, 862 S.W.2d 327 (Ky.1993).

Because there is no rational distinction between UM and UIM coverage for purposes of aggregation or stacking, and because *Marcum* resolves single premium UIM coverage in favor of the insurer, we therefore hold that an insurer is not required to stack multiple units of UM coverage which have been paid by a single premium, if that premium is not based on the number of vehicles insured. As in *Marcum*, we base this conclusion on our recognition that an insured has no reasonable expectation of stacking where he or she pays a single premium which does not vary based on the number of vehicles insured.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

In the matter at bar, it is uncontroverted that the new policy which became effectual on August 13, 2001, charged a single premium for three units of UM coverage, and that the premium is actuarial and not based on the number of vehicles insured. The Adkinses were given notice of the policy change both by way of a written notice and by the changed terms on the Declarations page. The notice stated that the amount of UM coverage shown on the Declaration page, i.e., $50,000, was the maximum amount of Kentucky National's liability for injuries sustained by any one person in any one accident regardless of the number of vehicles shown in the Declarations. As such, the Adkinses had no reasonable expectation of aggregate coverage. The trial court correctly found that there were no genuine issues of material fact and that Kentucky National was entitled to a judgment as a matter of law. *Scifres, supra.* Accordingly, we find no error.

For the foregoing reasons, we affirm the summary judgment of the Pike Circuit Court.

ALL CONCUR.