RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DENNIS PENNINGTON and SHARON
PENNINGTON, Co-Administrators of the
Estate of Stacey Pennington,
> > > *Plaintiffs-Appellants,*

> > v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY et al.,
> > > *Defendants-Appellees.*

No. 07-6187

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 06-00239—Joseph M. Hood, District Judge.

Argued: July 29, 2008

Decided and Filed: January 21, 2009

Before: BATCHELDER and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Neil E. Duncliffe, DUNCLIFFE LAW OFFICE, Georgetown, Kentucky, for Appellants. Michael Harris Baker, BAKER, KRIZ, JENKINS & PREWITT, Lexington, Kentucky, for Appellees. **ON BRIEF:** Neil E. Duncliffe, DUNCLIFFE LAW OFFICE, Georgetown, Kentucky, for Appellants. Michael Harris Baker, BAKER, KRIZ, JENKINS & PREWITT, Lexington, Kentucky, for Appellees.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge.  Stacey Pennington, the 17-year-old daughter of Dennis and Sharon Pennington, was killed in an automobile accident in July 2004.  The Penningtons had four drivers in their family, all of whom were insured by State Farm Mutual Automobile Insurance Company.  In addition to insuring their vehicles, the Penningtons purchased underinsured motorist (UIM) coverage with limits of $100,000 per person/$300,000 per accident (100/300 UIM coverage). UIM coverage provides funds to an insured if the liability insurance held by the person responsible for the accident is insufficient to compensate the insured for injuries incurred.  At issue on appeal is whether, under Kentucky law, an insurance company may charge a greater UIM premium based on the number of *drivers* on a policy without being liable for multiple UIM coverage units (i.e., "stacking").

The district court determined that the Penningtons purchased only one unit of 100/300 UIM coverage for four drivers and were not entitled to stacking.  This appeal followed.  A few weeks prior to oral argument, the Penningtons filed a motion asking us to certify the legal question at issue to the Kentucky Supreme Court.  For the reasons set forth below, we **DENY** the motion to certify and **AFFIRM** the judgment of the district court.

**I.    BACKGROUND**

The following summary of the facts is drawn primarily from the district court opinion. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2029501, at *1 (E.D. Ky. July 11, 2007).  On July 10, 2004, Stacey Pennington was killed in an automobile accident when Sidney Walker, who was driving his motorcycle while intoxicated, disregarded a traffic signal and collided with her 1995 Ford Mustang. Walker was insured by Progressive Insurance Company, which settled the wrongful-death claim against him for its $50,000 bodily injury limit.  Dennis and Sharon

Pennington then asserted a claim on behalf of Stacey's estate for UIM payments under their State Farm policy.

In November 2004, the Penningtons and State Farm agreed to a Release and Reservation of Rights to Other Claims. In exchange for $100,000, representing the payment for one unit of UIM coverage, the Penningtons agreed to release State Farm from all claims arising out of Stacey's death with the exception of "any and all other actual or potential claims against State Farm for payment of additional underinsured motorist coverages under its automobile policies." The Penningtons subsequently filed this action in the Scott County, Kentucky, Circuit Court. They sought to recover two additional units of UIM coverage, full personal injury protection coverage, and damages for unfair claims practices/bad faith. State Farm removed the case to federal district court on the basis of diversity of citizenship.

According to the record, the Penningtons' State Farm policy covered five automobiles and one motorcycle at the time of the accident. The Penningtons purchased UIM coverage on only one of the vehicles—a 1999 Oldsmobile van—but the policy covered the four drivers in the Pennington household at all times (i.e., the coverage was personal to the drivers, not limited to the particular vehicle). According to the policy's declarations page, the Penningtons paid $90.72 for UIM coverage limits of $100,000 per person/$300,000 per accident ("100/300"). At the time the Penningtons purchased the policy, the one-driver premium for one unit of 100/300 UIM coverage was $33.60, the two-driver rate was $60.48, and the three-plus driver rate was $90.72. Jay Hieb, Vice President in Actuary with State Farm, testified by deposition that State Farm's premium was structured to charge more for the increased *risk* borne by the company as a result of providing personal coverage to additional drivers. Although the Penningtons received UIM coverage for four drivers, their premium was not simply a *multiplier of coverage* (e.g., multiplying the base premium rate by the number of drivers). Rather, if a multiplier of coverage had been used, the family would have been charged four times the base premium for the four drivers in the household. The Penningtons' UIM premium was instead determined based on a *rating factor* of only 2.7. State Farm arrived at the

2.7 multiplier after an actuary calculated the added risk associated with adding additional drivers to a single UIM policy. The final price for UIM coverage paid by the Penningtons was calculated by multiplying the one-driver rate of $33.60 by 2.7, the risk multiplier that State Farm had determined was appropriate for households with three or more drivers ($33.60 x 2.7 = $90.72).

Apparently viewing the material facts as undisputed, both parties moved for summary judgment. State Farm's motion was granted by the district court. The court first noted that the "issue of whether an insurance company can charge greater UIM premiums based on the number of insured [drivers] on a policy without being exposed to stacking [] is a matter of first impression," and then held that stacking was inappropriate because the Penningtons had purchased only one unit of UIM coverage for four drivers and had received added coverage for the additional cost. *Pennington*, 2007 WL 2029501, at *2-3. This is the only issue that the Penningtons raise on appeal. In July 2008, after briefing was completed, the Penningtons filed a motion asking us to certify to the Kentucky Supreme Court the question of whether, under Kentucky law, an insurance company is subject to the stacking of UIM coverage if it charges a greater UIM premium based on the number of insured drivers in a household.

## II.   ANALYSIS

### A.   Certification to the Kentucky Supreme Court

"The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v Schein*, 416 U.S. 386, 391 (1974)). Certification "is most appropriate when the question is new and state law is unsettled." *Id.* (citing *Lehnam Bros.*, 416 at 390-91). As the Tenth Circuit has noted, however, the federal courts generally "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

We first note that the Penningtons failed to request certification of the legal question at issue  when the case was before the district court.  Likewise, on appeal, the Penningtons failed to request certification until well after the parties had completed briefing.  Both this court and district court have therefore expended considerable time and resources addressing the question currently before us.  And although the legal question here is one of first impression under Kentucky law, we believe that the relevant caselaw addressing UIM premiums and stacking provides sufficient guidance to allow us to make a clear and principled decision.  Because we see no reason to trouble the Kentucky Supreme Court under such circumstances, we deny the Penningtons' motion to certify and will address the merits of the case.

**B.       Standard of review**

We review de novo the district court's grant of summary judgment.  *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Because this case is before us based on diversity of citizenship, we must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The parties agree that the insurance contract at issue here is governed by Kentucky law.  In applying Kentucky law, we "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  If the issue has not been directly addressed, we must "anticipate how the relevant state's highest court would rule in the case and are

bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*

## C.          Kentucky insurance law

When interpreting insurance contracts, the Kentucky Supreme Court has held that courts are to look at the "reasonable expectations" of the insured. *Marcum v. Rice*, 987 S.W.2d 789, 791 (Ky. 1999) (citation omitted). "The reasonable expectations of an insured are generally determined on the basis of an objective analysis of separate policy items and the premiums charged for each." *Id.* When an insured "has bought and paid for an item of insurance coverage, he may reasonably expect it to be provided." *Id.*

In the 1990s, the Kentucky Supreme Court decided a number of cases addressing UIM coverage and explained the circumstances in which an insured will be deemed to have purchased multiple units of UIM coverage that may be stacked. The Court first made clear in *Hamilton v. Allstate Insurance Co.*, 789 S.W.2d 751, 753 (Ky. 1990), that UIM coverage is different from typical liability insurance because UIM coverage is "personal to the insured." This means that UIM coverage follows an insured person as opposed to any particular vehicle (i.e., the policy covers each insured as a driver, a passenger, a pedestrian, or a bystander, whether inside or outside a vehicle).

In the related case of *Chaffin v. Kentucky Farm Bureau Insurance Co.*, 789 S.W.2d 754, 756 (Ky. 1990), the Kentucky Supreme Court held that UIM premiums may sometimes give rise to separate units of UIM coverage that may be "stacked" by the insured. The Court reasoned that if an insurance company charges "separate premiums" for multiple items of the "same" personal insurance, then an insured is generally entitled to stack the policy and collect money for each unit of UIM coverage purchased. *Id.* In other words, "the personal nature" of UIM coverage creates a "reasonable expectation that payment of separate premiums results in separate coverages." *Allstate Ins. Co. v. Dicke*, 862 S.W.2d 327, 328 (Ky. 1993). If an insured has paid additional money

without receiving additional coverage, stacking is necessary to prevent insurance companies from depriving an insured of benefits that he or she has paid for. *Id.*

In *Estate of Swartz v. Metropolitan Property & Casualty Co.*, 949 S.W.2d 72, 75 (Ky. Ct. App. 1997), the Kentucky Court of Appeals explained that when deciding whether UIM coverage should be stacked, courts should undertake "an objective analysis of separate policy items and the premiums charged for each." The court noted that "the deciding factor is not what the individual insured knew, read, or expected, but what he or she actually paid for UIM coverage and the manner in which the insurance company calculated and billed the premium." *Id.* It also explained that "the payment of separate premiums for multiple items of the same 'personal' insurance coverage [is what] gives rise to the concept of stacking." *Id.* at 76.

The UIM premium paid by the insureds on their multi-vehicle policy in *Swartz* was almost twice that charged on a single-vehicle policy covering the same people. *Id.* at 77. *Swartz* concluded that charging an additional premium for adding a vehicle to a UIM policy gives rise to an additional unit of UIM coverage that is subject to stacking. *Id.* at 76-77. Because UIM coverage is personal, and the Swartzes were covered regardless of which vehicle they were driving, the couple had paid an additional premium without receiving any additional coverage. *Id.* at 77. On that basis, the court determined that the Swartzes' policy was subject to stacking. *Id.* at 77-78.

The *Swartz* court went on to note that stacking would apply to per-vehicle UIM policies even if the insurance company ostensibly charged a single premium for all the vehicles covered. *Id.* at 77. *Swartz* therefore suggests that the determinative issue in stacking cases is whether the insured paid multiple premiums for the *same* amount of coverage, regardless of how the payment is characterized.

The *Swartz* opinion also makes clear that "an insurance company *could*, through the calculation and adoption of an actuarially appropriate premium [i.e., based on its estimate of risk], charge an insured a single UIM fee regardless of the number of vehicles covered under the policy, entitling that insured to only one unit of UIM

protection." *Id.* (original emphasis omitted, new emphasis added). But the insurer there (Metropolitan) did not base its premium on an actuarial calculation of risk. Instead, it simply multiplied its base (single-vehicle) premium rate by the number of insured vehicles. *Swartz* therefore stands for the proposition that this "simple multiplication" approach necessitates stacking.

The state appellate court's conclusion in *Swartz* that insurance companies may account for risk when setting UIM premium rates was affirmed by the Kentucky Supreme Court in *Marcum*, 987 S.W.2d at 790-91. There, the Court had before it an insurance policy that charged a per-person premium of $14 for UIM coverage. *Id.* at 791. The price of $14 was "based upon the average number of vehicles (between two and three) owned by all . . . policyholders in Kentucky." *Id.* Later, the company adjusted its premium structure on the basis of "an actuarial projection of future losses that was based upon data from [the insurance company's] loss experience for the previous three years." *Id.*

Although the insurance company in *Marcum* did not charge its insureds multiple premiums for UIM coverage on different vehicles, it did allow them to purchase UIM coverage for any one individual in an amount up to $1 million. *Id.* The Court found that because the UIM premium was based on an assessment of the risk of loss incurred by the insurance company and did not "vary according to the number of vehicles covered by the policy," stacking was inappropriate. *Id.*

**D.**     **The Penningtons' UIM coverage**

Against this background, the district court in the present case determined that the Penningtons' per-driver UIM premium did not give rise to stacking. The court first found that "[t]he insurance company obviously charged 'separate' premiums in the guise of one lump sum because it multiplied the premium based on the number of insured." *Pennington*, 2007 WL 2029501, at *3. Nonetheless, the court determined that stacking was inappropriate in light of State Farm's per-driver pricing structure. The court noted that "[p]remiums calculated based on the number of insured differ from premiums

calculated based on the number of vehicles because UIM coverage is personal to the insured." *Id.* In other words, the court reasoned that stacking is appropriate only where an insured has paid additional money without receiving additional coverage. It therefore determined that stacking was inappropriate in the present case because the Penningtons received additional coverage for each driver in their household in exchange for the higher premium.

As the Penningtons point out, however, the district court erred in describing how the UIM coverage was allocated in a single accident. In its opinion, the district wrote that

> a $300,000 per accident coverage limit is meaningless if an individual is insured up to only $100,000 per person. *See infra* n.1. Therefore, the Penningtons (and other similarly-situated insureds) effectively received greater per accident coverage in return for the increased premiums. If the Penningtons were entitled to three separate units of 100/300 UIM coverage, they would receive a windfall. To wit, if the entire family was involved in *one accident* and was entitled to three separate units of coverage, they would be entitled to recover up to $900,000, nine times more than one individual with one unit of coverage could receive under the $100,000 per person limitation. This would be a windfall because the Pennington's premium was only 2.7 times greater than what the individual would have paid.

*Pennington*, 2007 WL 2029501, at *3 (emphasis added). In an earlier footnote, referenced in the text above, the court stated that "the $300,000 per accident limit is meaningless unless there are at least three drivers on the policy, since the coverage limits are $100,000 per person." *Id.* at *1 n.1.

Both sides agree that the district court was mistaken in its observation that the $300,000 per accident limit is meaningless unless there are three insured drivers on the policy. That observation was inaccurate because uninsured motorist coverage can extend to individual insureds who are not covered as drivers. *See, e.g.*, *Midwestern Indem. Co. v. Craig*, 665 N.E.2d 712, 714 (Ohio Ct. App. 1995) (describing an uninsured motorist policy that, by its terms, extended to "a person living in *your* household, related to *you* by blood." (emphasis in original)). So if, for example, an insured parent and his

or her three nondriving minor children were all injured in one accident, the parent's UIM policy might define the children as "insureds" and cover all four people in the accident. *See id.* In that situation, the $300,000 cap would be meaningful because the four injured individuals could cumulatively collect no more than that amount from the UIM insurer. The error in the district court's understanding of how the per-accident limits applied to the Penningtons, however, does not diminish the correctness of its ultimate determination that the Penningtons received additional UIM coverage for their higher premium.

To determine whether the Penningtons' UIM policy is one that is subject to stacking, as in *Swartz*, or one that is not subject to stacking, such as in *Marcum*, it is necessary to understand the distinction between the two pricing methods that underlie the determination of the premiums. And, to do that, one needs to first understand how State Farm formerly priced its policies per vehicle (as in *Swartz*) and currently prices its policies based on risk (as in *Marcum*). As explained in the deposition of Jay Hieb, Vice President in Actuary with State Farm, the price for covering each vehicle under a per-vehicle UIM policy was first determined based on the number of drivers in a household. While a single driver paid $33.60 for one unit of UIM coverage for one vehicle, a household of three or more drivers paid $90.72 for that one unit of coverage. To add an additional vehicle to a UIM policy, the insurance company would then multiply the per-vehicle rate by a set predetermined factor. That resulting additional charge was added to the price of the insureds' UIM coverage on a per-vehicle basis. This pricing structure gave rise to stacking because the additional premiums that the insurance companies charged on a per-vehicle basis provided no additional UIM coverage to the insured.

No Kentucky court that has addressed stacking under a per-vehicle policy, however, has ever suggested that anything is wrong with an insurance company's per-vehicle pricing practice of charging a higher premium to households with multiple drivers when setting the original rate for covering one vehicle (i.e. charging a family with three or more drivers $90.72 for UIM coverage versus $33.60 for a single driver).

What gave rise to stacking under the per-vehicle pricing structure was the practice of effectively double-charging the insured for covering *both* drivers *and* vehicles.

Under the per-driver policy at issue here, however, the $90.72 paid by the Penningtons as a higher premium extended UIM coverage to additional drivers. The Penningtons therefore got what they paid for: namely, one unit of UIM coverage for four drivers. Per-driver policies are therefore distinguishable from per-vehicle policies and stacking is inappropriate.

Further evidence that the UIM policy in question does not expose the insurance company to stacking can be found in State Farm's pricing structure. As explained earlier, the record demonstrates that State Farm's premium was structured to charge more for the increased *risk* borne by the company as a result of providing personal coverage to additional drivers. Although the Penningtons received UIM coverage for four drivers, their premium was not simply a *multiplier of coverage* (e.g., multiplying the base premium rate by the number of drivers). Rather, if a multiplier of coverage had been used, the family would have been charged four times the base premium for the four drivers in the household. Instead, the Penningtons' UIM premium was determined based on a *rating factor* of only 2.7. State Farm arrived at the 2.7 multiplier after an actuary calculated the increased risk associated with adding more drivers to a single UIM policy.

The practice of setting premiums based on an assessment of risk was expressly approved by the Kentucky Supreme Court in *Marcum v. Rice*, 987 S.W.2d 789 (Ky. 1999). There the Court held that an insurance company may permissibly alter its premium structure based on "an actuarial projection" of the company's risk and potential loss. *Id.* at 791. The *Marcum* decision made clear that insurance companies could use risk-rating factors without being exposed to stacking because such factors are not a multiplier of units of coverage, but rather allow insurance companies to calculate and price the additional risk incurred by extending coverage to additional insureds. *Id.* In the present case, the 2.7 multiplier used by State Farm to account for the additional risk

presented by insuring a three-plus driver household for UIM coverage is akin to the kind of rating factors explicitly approved of in *Marcum*.

The Penningtons make much of the Court's statement in *Marcum* that the premium in that case stayed the "same regardless of the number of *vehicles or insureds* on a particular policy." *Id.* (emphasis added). They argue that *Marcum* clearly establishes that per-driver UIM policies require stacking. But as the Penningtons conceded in their motion to certify the legal question in this case to the Kentucky Supreme Court, the issue of whether UIM units of coverage may be stacked based on the increased risk of additional drivers is a question of first impression under Kentucky law. *Marcum* addressed only the question of whether stacking was appropriate under a *per-vehicle* premium; any reference to a per-driver premium was nothing more than dicta. The argument that the question before this court is foreclosed by *Marcum* therefore has no merit.

Furthermore, the *Marcum* decision provides tacit approval of price increases for UIM coverage based on the number of drivers. There, the insurance company charged a single premium of $14 for one unit of UIM coverage on a per-person basis. *Id.* at 790. The Court took no issue with the fact that the price for a unit of UIM coverage changed based on the number of individuals added to the policy. Rather, it approved the pricing structure on the basis that it "did not vary according to the number of vehicles covered by the policy." *Id.* at 791. Insurance companies are therefore permitted to account for additional risk incurred by providing UIM coverage to additional drivers.

In the present case, by attesting to the fact that it had determined the price of the UIM premium based on actuarial calculations of risk, State Farm established that it was entitled to extra compensation for the risk it incurred by covering additional drivers on the Penningtons' UIM policy. The policy thereby satisfied Kentucky law, as declared in *Swartz* and *Marcum*, and was not subject to stacking. These circumstances obviate the merit of the Penningtons' stacking argument.

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** the Penningtons' motion to certify the question of law in this case to the Kentucky Supreme Court and **AFFIRM** the judgment of the district court.