RENDERED: FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0185-MR

ROBIN SLONE                                       APPELLANT

v.                APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 20-CI-004828

KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE: Robin Slone ("Slone") appeals from the Jefferson Circuit Court's order granting Kentucky Farm Bureau Mutual Insurance Company's ("KFB") motion to dismiss Slone's complaint. The complaint requested a declaratory judgment regarding Slone's underinsured motorist ("UIM") coverage with KFB. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Slone and Michael Conley were involved in a motor vehicle collision on March 4, 2018, in Johnson County, Kentucky, in which Slone sustained injuries. KFB insured Slone's vehicle. Slone settled her third-party claims against Conley and then asserted a claim for UIM coverage against KFB under Slone's policy.

Under the heading "General Policy Coverages," Slone's policy stated that her UIM coverage was $100,000 per person and $300,000 per accident. Slone paid a single premium amount of $101.70.

During the negotiation of Slone's UIM claims, Slone argued that she was entitled to "stack" her UIM coverage in the amount of $300,000 because KFB insured three vehicles under Slone's policy. KFB agreed to settle the claim for $100,000, arguing that one UIM coverage limit existed regardless of the number of vehicles listed on the policy.

Upon KFB's payment of the $100,000 to Slone, Slone signed a release agreement acknowledging receipt of $100,000 from KFB (the "Release Agreement"). The Release Agreement contained language that it did not release any other claims that either party may have against the other, including any claims Slone may have for the additional "stacked" UIM coverage.

Moreover, the Release Agreement stated that both parties mutually understood that the claim was "disputed" and that KFB was making no "admission of liability" for even the $100,000 paid by KFB. Additionally, the Release Agreement stated that Slone did:

> declare and represent that the injuries sustained, and that recovery therefrom, is uncertain and indefinite, and in making this release and agreement it is understood and agreed that [Slone relied] wholly upon [her] own judgment, belief, and knowledge of the nature, extent, and duration of said injuries, and that [Slone had] not been influenced to any extent whatsoever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing them, or by any physician or surgeon employed by them.

Slone subsequently filed a complaint against KFB on August 19, 2020, requesting a declaratory judgment from the circuit court that her KFB policy provided $300,000 in UIM coverage. Slone made no claim in her complaint that the value of her bodily injury damages following the collision exceeded $135,000, which represented the sum of the personal injury protection ("PIP") benefits paid to her by KFB, the settlement amount she had reached with Conley, and the $100,000 in UIM coverage amounts KFB paid to her.

Thereafter, KFB filed a motion to dismiss Slone's complaint, or in the alternative, to bifurcate and stay Slone's claim for declaratory judgment. The circuit court held a hearing and ultimately granted KFB's motion to dismiss.

-3-

Specifically, the circuit court determined that declaratory relief was not available in this matter because, under *Coots v. Allstate Insurance Company*, 853 S.W.2d 895 (Ky. 1993), no actual, justiciable controversy existed but rather "simply a request for an advisory opinion." *Id.* at 904. The circuit court held that Slone was first required to establish that her compensable damages exceeded the settlement funds already received for the court to issue a declaratory judgment.

The circuit court further held that, in this case, the UIM coverage was not appropriate for "stacking," as the policy's language indicated that it was not a case of separate premiums under the guise of one premium, as in *Estate of Swartz v. Metropolitan Property & Casualty Company*, 949 S.W.2d 72 (Ky. App. 1997), but instead one premium providing coverage. This appeal followed.

## ANALYSIS

### a. Standard of Review

As stated by the Kentucky Supreme Court, because "a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citation omitted).

**b. Discussion**

Slone first argues that the case presents an "actual controversy," and consequently, that the circuit court erred in its determination that declaratory relief was inappropriate. Kentucky Revised Statutes ("KRS") 418.040 states that a "plaintiff may ask for a declaration of rights" when "it is made to appear that an *actual controversy* exists[.]" (Emphasis added.) Accordingly, the first question one must ask in a declaratory judgment case is not whether *any* "present controversy" exists between the parties, but rather whether the claim represents "a *justiciable* controversy over *present rights, duties or liabilities*." *Dravo v. Liberty Nat'l Bank & Trust Co.*, 267 S.W.2d 95, 97 (Ky. 1954) (emphasis added).

Thus, the focus is on whether the claim involves a "justiciable controversy" concerning a "present right." *Id.* A "justiciable controversy" does not include questions "which may never arise or which are merely advisory, or are academic, hypothetical, incidental or remote, or which will not be decisive of any present controversy." *Id.* (citations omitted). Further, the definition of a "present right" varies depending on the type of declaratory actions.

Nevertheless, in a UIM case, the Kentucky Supreme Court has made clear that benefits only become payable – and a right to payment only exists – when the value of the underlying claim is established. *State Farm Mutual Automobile Insurance Company v. Riggs*, 484 S.W.3d 724, 729 (Ky. 2016).

Indeed, "the liability of the tortfeasor and the amount of damages sustained are elements that must be established in measuring the UIM carrier's obligation[.]" *Id.*

We agree with the circuit court that, as was the situation in *Coots*, in this case, it had "yet to be factually determined that the damages sustained [were] in an amount that exhaust[ed] and exceed[ed] the limits on [the] UIM policies so as to raise the question of additional coverage to the level of a case in controversy rather than simply a request for an advisory opinion." *Coots*, 853 S.W.2d at 904. Therefore, before Slone could establish a "present right" to compensation above the insurance proceeds that she had already received, any opinion on the potential availability of additional "stacked" insurance would be "advisory" only. *Bank One Kentucky NA v. Woodfield Financial Consortium LP*, 957 S.W.2d 276, 279 (Ky. App. 1997). Until Slone demanded a fixed value implicating the additional UIM benefits, no "present actual controversy" existed for the court to decide. *Black v. Elkhorn Coal Corp.*, 233 Ky. 588, 26 S.W.2d 481, 483 (1930).

In this case, the record reflects that Slone has not established any "present right" to additional UIM coverage. Indeed, KFB never stipulated or agreed to the amount of Slone's tort or UIM claims in any way or at any point during the litigation. Moreover, nowhere in the Release Agreement did KFB acknowledge Slone's evaluation of her claim, in fact stating that KFB believed the claim to be "disputed" and that there was "no admission of liability" for even the

-6-

amounts that KFB paid to Slone. In the end, to empower a court to consider issues of "stacking," a present right to the contested benefits must be established – either by stipulation, agreement, or litigation. Consequently, we affirm the circuit court's decision to dismiss the case based on the lack of an actual controversy.

However, as already discussed, the circuit court in this case also found in its opinion that stacking was not applicable to the UIM coverage in this case. Thus, we will also address Slone's claim that the circuit court erred in deciding the stacking issue against Slone. We find *Adkins v. Kentucky National Insurance Company* to be dispositive of the issue. 220 S.W.3d 296 (Ky. App. 2007). While *Adkins* deals with uninsured motorist ("UM") coverage rather than UIM coverage, "[b]ecause there is no rational distinction between UM and UIM coverage for purposes of aggregation or stacking," we find both its analysis and its holding to apply to the case *sub judice*. *Id.* at 299. In *Adkins*, Kathleen Adkins was killed in an automobile collision. *Id.* at 297. The at-fault driver was not insured at the time of the accident. *Id.* Kathleen and her husband had UM coverage via a policy issued by Kentucky National. *Id.*

At the time of issuance, the Adkins's UM policy provided insurance coverage for two vehicles. *Id.* Sometime thereafter, the Adkinses added an additional vehicle to their coverage. *Id.* After adding the third vehicle, the Adkinses began paying three separate premiums for UM coverage, representing

one unit of coverage per vehicle. *Id*. Each UM coverage premium cost $32 for $50,000 of UM coverage, for a total of $96 in premium payments representing $150,000 of stacked coverage. *Id*.

Before the policy's renewal date, Kentucky National mailed to the Adkinses renewal materials, including a written notice of changes to their coverage. *Id*. Specifically, Kentucky National stated that it would begin charging a single UM premium for the three units of coverage on the three vehicles rather than three distinct premiums as had previously been done. *Id*. As noted by the Court, "[t]he apparent purpose of this change–though not stated in the notice–was to prevent the stacking of the three units of UM coverage." *Id*. The Adkinses accepted the new coverage and began paying premiums according to its terms. *Id*.

After Kathleen's death, Kathleen's estate sought payment from Kentucky National of $150,000. *Id*. Kentucky National offered to pay a non-aggregate – or "non-stacked" – coverage limit of $50,000. *Id*. Rejecting the offer, Kathleen's estate filed an action. *Id*.

The circuit court ultimately granted summary judgment in favor of Kentucky National, finding that it had given the Adkinses proper notice of the policy change affecting the UM coverage, that the Adkinses had accepted the change when they renewed the policy, and that Kathleen's estate was entitled to one unit of UM coverage, or $50,000. *Id*.

On appeal, the Court determined that there was no basis to overturn the summary judgment on appeal. *Id.* at 298. Specifically, the Court pointed to the notice sent to the Adkinses, which contained language identical to the language in the notice in this case. *Id.* Moreover, the Court highlighted the following language in the notice provided by Kentucky National: "Only one charge is made for this coverage per policy and coverage *is limited to the coverage limits shown on the declarations page.*" *Id.* (Emphasis in original.) Based on this "clear and unambiguous" language, the Court found that the record supported the circuit court's conclusion that the Adkinses received notice of the change in UM coverage and consented to the change by accepting the new policy and tendering the premiums. *Id.* at 298-99.

Moreover, the Court, after discussing *Marcum v. Rice*, 987 S.W.2d 789 (Ky. 1999) and *Swartz*, 949 S.W.2d 72, held that "an insurer is not required to stack multiple units of UM coverage which have been paid by a single premium, if that premium is not based on the number of vehicles insured" and is actuarially based. *Adkins*, 220 S.W.3d at 299-300.

Specifically, a panel of this Court in *Swartz* made clear that "an insurance company *could*, through the calculation and adoption of an actuarially appropriate premium, charge an insured a single UIM fee regardless of the number of vehicles covered under the policy, entitling that insured to only one unit of UIM

protection[.]" 949 S.W.2d at 77 (original emphasis omitted, new emphasis added). However, because the insurer in *Swartz* did not base its premium on an actuarial calculation of risk but rather multiplied its single-vehicle premium rate by the number of insured vehicles, *Swartz* therefore stands for the proposition that this "simple multiplication" approach necessitates stacking. *Id*.

The Court's conclusion in *Swartz* that insurance companies may account for risk when setting UIM premium rates was affirmed by the Kentucky Supreme Court in *Marcum*. 987 S.W.2d at 790-91. Although the insurance company in *Marcum* did not charge its insureds multiple premiums for UIM coverage on different vehicles, it allowed them to purchase UIM coverage for any individual in an amount of up to $1 million. *Id*. The Court found that because the UIM premium was based on an assessment of the risk of loss incurred by the insurance company and did not "vary according to the number of vehicles covered by the policy[,]" stacking was inappropriate. *Id*.

In this case, based on the pleadings, it is uncontroverted that Slone received the notice from KFB indicating that KFB was no longer calculating UIM coverage on a per-vehicle basis, that Slone was being charged one premium for UIM coverage, that coverage was limited to the coverage limits shown on the declarations page, and that the UIM premium being charged was based on actuarial calculations of risk and not based on the number of vehicles insured. Thus, we

-10-

affirm the circuit court's conclusion that stacking was not applicable in this situation.

## **<u>CONCLUSION</u>**

We affirm the order of the Jefferson Circuit Court.

DIXON, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.


BRIEFS FOR APPELLANT:

Kirk Hoskins
Louisville, Kentucky

BRIEF FOR APPELLEE:

Valerie W. Herbert
Brian D. Stempien
Louisville, Kentucky