NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0473n.06

Nos. 09-6260, 10-5065

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 12, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| BKB PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SUNTRUST BANK, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GILMAN, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In this case involving a commercial loan and derivative interest-rate swap, plaintiff-appellant BKB Properties, LLC ("BKB") appeals the district court's order granting defendant-appellant SunTrust Bank's ("SunTrust") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). BKB contends that it stated claims for breach of contract and libel of title when SunTrust demanded a termination fee under the interest-rate swap agreement even though the Loan Agreement permitted prepayment of the Note without penalty. BKB also appeals the district court's award of attorneys' fees to SunTrust, arguing that the fee provision was substantively unconscionable because it did not require SunTrust to prevail in the litigation in order to collect fees. In the alternative, BKB requests that we certify the question of unconscionability to the Tennessee Supreme Court. For the reasons that follow, we deny BKB's request for certification and affirm the district court's decisions.

-1-

I.

Following negotiations in early 2002, BKB and SunTrust entered into a loan in the principal amount of $6,960,000 and a derivative interest-rate swap to finance the construction of improvements to real property located at 630 Bakers Bridge Avenue in Franklin, Tennessee. The loan was memorialized in a Construction Loan Agreement ("Loan Agreement") and a Construction Note ("Note"), dated March 12, 2002, through which SunTrust agreed to lend BKB money to finance the project. Under the Loan Agreement, the term of the loan was approximately 20 years, although BKB was permitted "at any time or from time to time, to permanently prepay the Note in whole or in part, without penalty or premium." The Note obligated BKB to pay a variable rate of interest on the loan.

During the negotiations, BKB stated its desire to obtain a fixed-rate loan, and SunTrust advised that this result was attainable through an interest-rate swap agreement, in which the parties agreed to "swap" cash flows over a stated period of time on a hypothetical principal known as the "notional amount." Under a swap agreement, one party makes periodic interest payments to the other party at a fixed rate on the notional amount, and the counter-party makes periodic interest payments at a variable rate on the same notional amount. *See Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1042–43 (9th Cir. 2003). Although this notional amount is used to calculate the payments owed, it is not directly exchanged. *Id.* at 1043. BKB alleges that SunTrust indicated that "the only material effect" of the swap was to fix the interest rate on the loan; thus, the swap functioned as a hedge, protecting BKB from increasing interest rates under its variable-rate loan.

On March 12, 2002, the parties entered into the interest-rate swap with a termination date of March 15, 2012, and this agreement was memorialized in an ISDA Master Agreement (the "Swap Agreement"), a Schedule to the ISDA Master Agreement (the "Swap Schedule"), and a Confirmation of Interest Rate Transaction (the "Swap Confirmation"). Both the loan and the swap were secured by a deed of trust on the property.

Under the Swap Agreement, the notional amount mirrored the principal of the parties' loan and changed in tandem with the loan's amortization schedule. BKB paid SunTrust a fixed rate of 8.08% on the notional amount, and SunTrust paid BKB a periodic variable rate on the notional amount, which was equivalent to the variable-rate payment that BKB owed SunTrust under the Loan Agreement. Because the Swap Agreement permitted the parties to net their monthly obligations to one another, BKB obtained a synthetic fixed-rate loan in the amount of 8.08% per month. *See Thrifty Oil*, 322 F.3d at 1054 n.20 (describing the purpose and effect of synthetic fixed-rate loans). The Swap Agreement provided for a fixed 10-year term with payments due on the fifteenth of each month and also included a termination fee in the event of early termination. In executing the swap, BKB signed the Swap Confirmation, affirming that it understood and was "capable of managing the risks associated with the transaction."

In early 2004, when BKB contacted SunTrust seeking to refinance the loan, SunTrust allegedly stated that BKB would be required to pay a "substantial penalty" to do so. Instead, BKB waited and timely notified SunTrust before March 2007 of its intention to prepay the loan and end the Swap Agreement by calling the Note. BKB alleges that SunTrust "refused to accept payment, refused to cancel the Swap Agreement, and refused to remove its lien from the property unless BKB

[] paid a substantial penalty." SunTrust, however, contends that the "penalty" was "in fact entirely consistent with the parties' agreement under the Swap Transaction" and was merely a requirement that BKB "pay market value for the Swap Transaction in order to terminate it early." Following unsuccessful negotiations to resolve the dispute, BKB filed the lawsuit underlying this appeal and paid the swap-termination fee under protest.

II.

BKB filed suit against SunTrust on April 14, 2008, in the Chancery Court of Davidson County, Tennessee, for breach of contract and libel of title on the grounds that SunTrust misrepresented the terms of the Swap Agreement, wrongfully demanded a penalty payment in violation of the terms of the Loan Agreement, and breached its obligation of good faith and fair dealing. In the alternative, BKB alleged claims for common law fraud and a violation of the Tennessee Consumer Protection Act.[1] On May 23, 2008, SunTrust removed the case to the United States District Court for the Middle District of Tennessee based upon diversity jurisdiction and, one month later, moved to dismiss BKB's claims pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

On March 2, 2009, the district court granted SunTrust's motion to dismiss BKB's claims for breach of contract, libel of title, and a violation of the Tennessee Consumer Protection Act. *BKB Props., LLC v. SunTrust Bank*, No. 3:08-cv-00529, 2009 WL 529860, at *1 (M.D. Tenn. Mar. 2, 2009). Although the district court agreed with BKB's argument that the Loan Agreement and Swap Agreement should be construed as parts of the same transaction, the court held:

---

[1]The district court granted summary judgment to SunTrust with respect to these claims, and BKB has not appealed this judgment.

> [T]hough the purpose and practical effect of the swap may have been to provide BKB with the financial equivalent of fixed-rate financing, the terms of the agreement . . . make clear that BKB had distinct obligations under the loan portion of the agreement and under the swap portion of the agreement—that is, BKB had an obligation to repay the Note and a separate obligation to make payments under the swap. Nowhere in the agreement does it suggest that the swap aspect of the transaction would be affected by the prepayment of the Note.

*Id.* at *6. Thus, the court concluded that payments owed under the Swap Agreement "would have been owing regardless of whether BKB prepaid the Note" and "constituted merely BKB's satisfaction of its distinct and on-going obligation under the swap." *Id.* at *6, *8. The court found, "by the same logic," that SunTrust was not required to remove its lien on the property until BKB satisfied its obligations under the swap. *Id.* at *6. With respect to the libel-of-title claim, the district court determined that BKB had not alleged that SunTrust published a false statement regarding the title of the property, as is required to state a claim. *Id.* at *8–9.

On October 26, 2009, SunTrust moved for an award of attorneys' fees and expenses in the amount of $69,716.58, citing Section 10.11 of the Loan Agreement, which stated that BKB "shall pay . . . the reasonable attorney's fees of [SunTrust]" in "the event of any action at law or suit in equity in connection with this Agreement or the other Construction Loan Documents" or if SunTrust "retains legal counsel in connection with this agreement or the other Construction Loan Documents." Under the contract, the "Construction Loan Documents" are defined to include "any Hedging Agreement," which in turn includes "any interest rate swap."

On January 13, 2010, the district court granted SunTrust's motion for attorneys' fees and expenses on the grounds that the conditions set forth in the Loan Agreement had been met—namely, BKB asserted claims against SunTrust in connection with the Construction Loan Documents, and

SunTrust retained legal counsel in connection with the dispute. *BKB Props., LLC v. SunTrust Bank*, No. 3:08-cv-00529, 2010 WL 200750, at *2–3 (M.D. Tenn. Jan. 13, 2010). The district court rejected BKB's argument that the fee provision was unconscionable, noting that BKB was a sophisticated commercial entity that "was not presented with the contract terms on a 'take it or leave it' basis." *Id.* at *4. The court found that, although the fee provision was "undoubtedly . . . a bitter pill for BKB to swallow," BKB "could have negotiated for a different version of the provision or demanded that the attorneys' fee provision be stricken altogether from the parties' agreement." *Id.* at *4–5. The district court further determined that the $69,716.58 fee represented "reasonable compensation in this case." *Id.* at *8.

Following the district court's orders granting SunTrust's motions to dismiss and for attorneys' fees, BKB timely appealed. On February 26, 2010, BKB also moved to certify the question of whether the attorneys' fee provision was unconscionable to the Tennessee Supreme Court. SunTrust has opposed this motion.

III.

BKB contends that the "unambiguous terms of the parties' Construction Loan Agreement establish that BKB was not required to make further payments under the parties' interest rate swap agreement after BKB prepaid the principal owed on the note" and that the swap-termination fee was "the functional equivalent[] of a prepayment penalty." SunTrust, however, maintains that the unambiguous terms of the Swap Agreement obligated BKB to pay a fee in the event of early termination and that the district court "properly rejected BKB's attempt to bootstrap the 'no

prepayment penalty' provision of the Loan Agreement onto the separate obligations between BKB and SunTrust under the Swap."

A.

We review the district court's order granting a Rule 12(b)(6) motion to dismiss *de novo*. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). "We accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). But, "the nonmoving party must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . . Factual allegations must be enough to raise a right to relief above the speculative level.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and editorial marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

B.

BKB argues that the termination fee assessed under the Swap Agreement served as the functional equivalent of a prepayment penalty on the Note and "therefore contradicts the agreement that BKB could prepay the loan without penalty or premium." We disagree. Under the terms of the Loan Agreement, BKB had "the right, at any time . . . to permanently prepay the Note in whole or in part, without penalty or premium." However, BKB's ability to prepay the Note without penalty

is not dispositive of its obligations with respect to the interest-rate swap. In particular, the Swap

Agreement states:

> [SunTrust] will have the right (but not the obligation) to terminate all or a pro rata portion of any Transaction related to the Loan Agreement and will be entitled to receive from . . . [BKB] the fair market value for such termination . . . upon the occurrence of one or more of the following events:
>
> (a) If the indebtedness under the Loan Agreement is (for whatever reason, in whatever manner) partially or fully paid or discharged (except with respect to any scheduled amortization) . . . .

Even construing the Loan Agreement and Swap Agreement as parts of a single transaction,

the terms of the agreement "make clear that BKB had distinct obligations under the loan portion of

the agreement and under the swap portion of the agreement—that is, BKB had an obligation to repay

the Note and a separate obligation to make payments under the Swap." *BKB Props.*, 2009 WL

529860, at *6. Thus, when BKB prepaid the Note, terminating both the loan and the interest-rate

swap, the market-value payment owed to SunTrust resulted from "its obligations under the swap and

would have been owing regardless of whether BKB prepaid the Note." *Id.* And, although BKB

contends that the swap-termination fee functioned as a prepayment penalty under the Loan

Agreement, BKB has not identified any contractual language indicating that calling the Note would

absolve it of its continuing duties under the interest-rate swap. To the contrary, "there is nothing in

the agreement that would permit the swap's explicit termination date simply to be disregarded upon

prepayment of the Note." *Id.*

We agree with the district court's analysis and conclude that it properly applied the

Tennessee rules of contract interpretation in finding that the Swap Agreement unambiguously

obligated BKB to pay SunTrust a fee in the event of early termination. *See Planters Gin Co. v. Fed.*

*Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) (stating that, if a contract's language

is "clear and unambiguous, the literal meaning of the language controls the outcome of [the] contract

dispute[]"). SunTrust acted within the unambiguous terms of the contract when it demanded

payment under the interest-rate swap upon BKB's prepayment of the Note, and BKB has therefore

failed to state claims for breach of contract or libel of title.[2]

IV.

In its next claim, BKB filed a motion pursuant to Tennessee Supreme Court Rule 23

requesting that this court certify the following question to the Tennessee Supreme Court: "Is an

attorneys' fee provision unconscionable if it would allow a losing party to recover attorneys' fees

from the prevailing party?" BKB contends that the Tennessee Supreme Court has not decided this

aspect of unconscionability; that the district court relied in error upon *Carrington v. W.A. Soefker*

---

[2]BKB also criticizes the district court's analysis of *Thrifty Oil*, which involved a variable-rate loan and a swap agreement that, in combination, had the effect of fixing the interest rate on the loan. 322 F.3d at 1046. In that case, the bank sought to collect payments due under a swap agreement after the borrower declared bankruptcy; the borrower argued that these payments comprised unmatured interest, which was disallowed under the Bankruptcy Code. *Id.* The Ninth Circuit rejected the borrower's argument and noted that, although the potential for abuse existed in cases involving "an unsophisticated borrower, non-standard swap documentation or artificially inflated swap pricing," these risks did not exist when "a standard interest rate swap [was issued] to a sophisticated borrower and the swap served a legitimate . . . purpose." *Id.* at 1053. Like the borrower in *Thrifty Oil*, BKB is a sophisticated commercial entity that willingly entered into a standard interest-rate swap with SunTrust for its own financial interests, and the swap agreement served the legitimate purpose of enabling BKB to obtain the benefit of the equivalent of fixed-rate financing when it was unable to syndicate a sizeable fixed-rate loan. Thus, we agree with the district court's conclusion that the payments due under the interest-rate swap did not constitute a prepayment penalty merely because SunTrust served as both lender and swap dealer. *See BKB Props.*, 2009 WL 529860, at *8.

*& Son, Inc.*, 624 S.W.2d 894 (Tenn. Ct. App. 1981); and that certification is an appropriate exercise of this court's discretion. SunTrust, however, urges this court to deny certification in the interest of judicial economy and on the ground that the Tennessee Supreme Court "has settled the law for determining whether contractual provisions are unconscionable" in *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004).

Under Rule 23, a question of law is eligible for certification where this court determines that (1) there is a question of law that is determinative of the cause, and (2) there is no controlling precedent in Tennessee Supreme Court decisions. Tenn. Sup. Ct. R. 23 § 1. Certification "is most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros.*, 416 U.S. at 390–91). Furthermore, "the federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation marks omitted).

It is first noteworthy that BKB failed to request certification in the district court, thus resulting in the considerable expenditure of judicial resources by the federal courts on the issue of unconscionability. *See id.* (noting that the federal courts had "expended considerable time and resources addressing the question currently before us" when the appellants failed to request certification in the district court or before briefing was complete). Second, as the district court recognized, the Tennessee Supreme Court has set forth a standard defining unconscionability: "An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and

circumstances, that the contracting party is denied any opportunity for meaningful choice." *Taylor*,

142 S.W.3d at 285. In *Taylor*, the court further explained:

> The determination that a contract or term is or is not unconscionable is made in light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes . . . .

*Id.* (quoting Restatement (Second) of Contracts § 208 cmt. a (1981)). Given this clear standard, and

in light of the time and resources already expended by the federal courts in deciding whether the

attorneys' fee provision was unconscionable, we deny BKB's motion for certification.

V.

In its final claim, BKB contends that the attorneys' fee provision set forth in the Loan

Agreement is substantively unconscionable. We generally review the district court's award of

attorneys' fees for an abuse of discretion; however, its factual interpretations are reviewed for clear

error, and its legal conclusions are reviewed *de novo. Shields v. Gov't Emps. Hosp. Ass'n, Inc.*, 490

F.3d 511, 514–15 (6th Cir. 2007). Because BKB argues that the attorneys' fee provision is facially

unconscionable, this legal question is subject to *de novo* review. *Id.* at 515; *Taylor*, 142 S.W.3d at

284–85.

Although BKB challenges the facial validity of the fee provision on the ground that the

provision permitted SunTrust to recover attorneys' fees and expenses even if it was not the

prevailing party, BKB does not dispute its liability for attorneys' fees under the Loan Agreement.

Section 10.11 of the Loan Agreement provides:

> In the event of any action at law or suit in equity in connection with this Agreement or the other Construction Loan Documents . . . or [SunTrust] retains legal counsel in

> connection with this Agreement or the other Construction Loan Documents, [BKB]
> . . . shall pay to [SunTrust] the reasonable attorneys' fees of [SunTrust].

The district court concluded that BKB was liable under Section 10.11 because it filed suit in connection with its obligations under the Construction Loan Documents, which included the interest-rate swap, and SunTrust retained counsel in defense. *BKB Props.*, 2010 WL 200750 at *2–3. On the question of unconscionability, the district court determined that the fee provision was not "sufficiently unfair and so one-sided as to 'shock the judgment of a person of common sense.'" *Id.* at *3 (quoting *Taylor*, 142 S.W.3d at 285). Rather, although the fee provision was undeniably one-sided, BKB was "a sophisticated corporate entity" that "was not presented with the contract terms on a 'take it or leave it' basis" and thus "could have negotiated for a different version of the provision" or demanded its removal. *Id.* at *4.

As the district court observed, Tennessee courts have upheld fee provisions that do not specify whether the collecting party must prevail in the litigation. *See, e.g.*, *Carrington*, 624 S.W.2d at 897 (affirming a trial court's award of attorneys' fees under a contract that permitted a contractor to recover from a subcontractor "all reasonable costs, charges, expenses, and attorney's fees expended" in connection with the enforcement of its interests, regardless of whether the contractor prevailed in the litigation, and noting that "courts do not re-write contracts merely because a party was unwise to agree to a term therein"). And, although BKB contends that *Carrington* conflicts with *Taylor*, 142 S.W.3d at 285, in which the Tennessee Supreme Court evaluated unconscionability "at the time the contract is made," the court in *Taylor* did not address this alleged inconsistency, nor has BKB identified any case law supporting such a claim. Thus, having carefully reviewed the parties'

briefs, the applicable law, and the district court's order granting SunTrust's motion for attorneys'

fees pursuant to Section 10.11 of the Loan Agreement, we agree with the district court's well-

reasoned analysis and find no need to expand upon its discussion of unconscionability, as defined

under Tennessee law. *See BKB Props.*, 2010 WL 200750, at *3–5.

VI.

For the foregoing reasons, we affirm the district court and deny BKB's motion for

certification.