Tamarin **LINDENBERG, Individually and as Natural Guardian of her minor child S.M.L., and Zachary Thomas Lindenberg, Plaintiffs,**

v.

## JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.

### No. 2:13-cv-02657-JPM-cgc

United States District Court, W.D. Tennessee, Western Division.

Signed November 24, 2015

696

Molly A. Glover, Charles Silvestri Higgins, Burch Porter & Johnson PLLC, Memphis, TN, for Plaintiffs.

Daniel Warren Van Horn, Michael C. McLaren, Robert Campbell Hillyer, Butler Snow LLP, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND GRANTING PLAINTIFF'S MOTION FOR CERTIFICATION OF QUESTIONS TO THE TENNESSEE SUPREME COURT

JON P. McCALLA, UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Jackson National Life Insurance Company's Motion for Judgment as a Matter of Law, made during trial on December 18, 2014 (see ECF No. 139) and brief filed January 5, 2015 (ECF No. 158), and Plaintiff Tamarin Lindenberg's Motion for Certification of Questions to the Tennessee Supreme Court (ECF No. 167), filed May 19, 2015. For the following reasons, Defendant's Motion is DENIED, and Plaintiff's Motion is GRANTED.

## I. PROCEDURAL BACKGROUND

This case concerns a dispute over a life insurance policy issued by Defendant Jackson National Life Insurance Company to Decedent Thomas A. Lindenberg. (See Joint Pretrial Order at 4, ECF No. 125.) Plaintiffs Tamarin Lindenberg, minor child S.M.L., and Zachary Thomas Lindenberg, are the former wife of Decedent and the two children of Thomas and Tamarin Lindenberg. (Id.)

On July 19, 2013, Plaintiffs filed their Complaint in the Circuit Court of Shelby County, Tennessee, for the Thirteenth Judicial District at Memphis. (ECF No. 1–1.) On August 23, 2013, Defendant removed the case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1 at 1.)

On August 30, 2013, Defendant filed an Answer to the Complaint. (ECF No. 4.) Defendant included in the filing a Third-Party Complaint for Interpleader against Mary Angela Lindenberg Williams and a Counterclaim against Tamarin Lindenberg. (Id. at 5–8.) With regard to Defendant's Counterclaim and Third-Party Complaint, Defendant asserted that it "[was] not in a position to determine, factually or legally, who is entitled to the Death Benefit," and requested the Court to "determine to whom said benefits should be paid." (Id. at 7.) On September 23, 2013, Plaintiff Tamarin Lindenberg and Third-Party Defendant Mary Angela Lindenberg Williams filed a Motion to Dismiss Defendant Jackson National Life Insurance Company's Counterclaim and Third-Party Complaint for Interpleader. (ECF No. 9.) On December 9, 2013, the parties filed a Joint Motion to Appoint James and Kimberly Griffith as Guardians Ad Litem for the minor children. (ECF No. 19.) The Motion was granted on December 10, 2013 (ECF No. 20).

On May 19, 2014, the Court granted Plaintiff Tamarin Lindenberg's and Third-Party Defendant Mary Angela Lindenberg Williams' Motion to Dismiss. (ECF No. 32.) The Court further ordered Defendant "to disburse life insurance policy benefits to Plaintiff in the amount of $350,000 with interest from January 23, 2013, until the date of payment." (Id. at 17.)

On August 21, 2014, Defendant filed a Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Common Law Bad Faith. (ECF No. 46.) Plaintiffs timely responded in opposition on September 17, 2014. (ECF No. 67.) Defendant filed a Reply on September 26, 2014. (ECF No. 79.) The Court held a telephonic hearing on, inter alia, the Motion to Dismiss on November 25, 2014, at which both parties were represented. (ECF No. 101.) On the same date, the Court entered an Order Granting in Part Defendant's Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Common Law Bad Faith. (ECF No. 102.) In the Order, the Court dismissed Plaintiffs' common law bad faith claim. (Id.) On December 9, 2014, the Court issued a second Order regarding Defendant's Motion to Dismiss, which denied Defendant's motion to dismiss claims for punitive damages. (ECF No. 124.)

On October 15, 2014, Defendant filed a Motion for Summary Judgment. (ECF No. 87.) Plaintiffs responded in opposition on November 17, 2014. (ECF No. 93.) Defendant filed a reply to Plaintiffs' response on November 21, 2014. (ECF No. 99.) On December 11, 2014, the Court granted Defendant's Motion for Summary Judgment as to the claims brought by Zachary Lindenberg and minor child S.M.L. and denied Defendant's Motion as to all other claims. (ECF No. 129.)

A jury trial was held from December 15, 2014, to December 22, 2014. (ECF Nos. 133, 136, 138–39, 141, 146.) On December 18, Defendant made the instant Motion for Judgment as a Matter of Law. (See ECF No. 139.) On December 22, 2014, the jury returned its verdict with the following findings:

1. The preponderance of the evidence demonstrated that Defendant breached the terms of its contract with Plaintiff Tamarin Lindenberg. (Verdict Form, ECF No. 151 at PageID 2015.) Plaintiffs were awarded actual

damages in the amount of $350,000.00. (Id.)

2. The preponderance of the evidence demonstrated that Defendant's refusal to pay Plaintiff Tamarin Lindenberg the death benefit was not in good faith. (Id. at PageID 2016.) Moreover, the preponderance of the evidence demonstrated that the refusal to pay resulted in additional expense, loss, or injury including attorney fees. (Id.) Plaintiffs were awarded bad faith damages of $87,500.00. (Id. at PageID 2017.)

3. Clear and convincing evidence demonstrated that Defendant acted either intentionally, recklessly, maliciously, or fraudulently. (Id. at PageID 2018.)

4. Plaintiffs were awarded punitive damages in the amount of $3,000,000.00. (ECF No. 152.)

On January 5, 2015, Defendant filed a brief in support of its Motion for Judgment as a Matter of Law. (ECF No. 158.) On January 12, 2015, Plaintiffs timely filed their Response in Opposition. (ECF No. 159.) On May 19, 2015, Plaintiffs filed a Supplemental Brief. (ECF No. 168.) On May 26, 2015, Defendant filed a Reply Brief. (ECF No. 172.)

Plaintiff filed a Motion for Certification of Questions to the Tennessee Supreme Court on May 19, 2015. (ECF No. 167.) Defendant filed a response on June 5, 2015. (ECF No. 174.) The State of Tennessee filed a Motion to Intervene and Memorandum in Support of the Motion to Intervene on June 12, 2015. (ECF Nos. 175–76.) The Court granted the Motion to Intervene on June 16, 2015. (ECF No. 177.) On July 7, 2015, the State filed a Response in Opposition to the Motion for Certification of Questions (ECF No. 178) and a Response to Defendant's Motion for Judgment as a Matter of Law (ECF No. 179).

## II. FACTUAL BACKGROUND

Defendant issued a life insurance policy to Decedent Thomas Lindenberg, effective January 23, 2002. (Stipulation No. 6(a), Joint Pretrial Order at 4.) The policy designated Plaintiff Tamarin Lindenberg as the primary beneficiary who was to receive 100% of the policy proceeds upon Decedent's death. (Stipulation No. 6(b), id.) The policy stated in relevant part: "THE COMPANY WILL PAY the face amount shown in the policy specifications, less any premium due, to the designated beneficiary upon due proof of the Insured's death and not later than two months after the receipt of such proof." (Lindenberg Policy, Trial Ex. 3, ECF No. 142.)

Plaintiff Tamarin Lindenberg and Decedent executed a Marital Dissolution Agreement ("MDA") in 2005, and a divorce decree was issued in 2006. (Stipulation No. 6(d), Joint Pretrial Order at 4; see also Trial Exs. 10, 11.) The MDA required that "Wife shall pay the Life Insurance premium for Columbus and Jackson National policies for so long as she is able to do so and still support the children." (Trial Ex. 10 at 7.) Additionally, the MDA required "Husband at his expense [to] maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries ...." (Id. at 9.)

Decedent died on January 22, 2013. (See Certificate of Death for Thomas Arthur Lindenberg, Trial Ex. 35.) On February 6, 2013, Defendant received from Plaintiff Tamarin Lindenberg a claim for the death benefit. (See Trial Ex. 22 at 1.) The instructions on the claim form required submission of Decedent's death certificate, as well as the MDA and the divorce decree because Plaintiff was an ex-spouse. (See id. at 1–2.) On March 11, 2013, Plaintiffs' attorney sent Defendant a letter seeking expedited review of the claim and payment

of the death benefit. (Trial Ex. 21.) On March 22, 2013, Defendant sent a letter in response requiring further action by Plaintiffs, including "waivers to be signed by the other potential parties"; and the obtaining of "court-appointed Guardian(s) for the Estates of the two minor children." (Trial Ex. 23.) Defendant stated that another option would be for Plaintiff Tamarin Lindenberg to waive her rights to the claim so that Defendant could disburse the proceeds to the minor children. (Id. at 2.)

Throughout the month of May 2013, Plaintiff Tamarin Lindenberg and Defendant were in communication about how to proceed and whether Defendant would interplead the funds with the Court. (See Trial Exs. 24, 25, 32.) On July 19, 2013, Plaintiffs filed suit for breach of contract and bad faith. (ECF No. 1–1.)

On May 29, 2014, by Order of the Court, Defendant disbursed payment of $366,363.22, the face amount of the policy plus interest, to Plaintiff. (Stipulation No. 6(k), Joint Pretrial Order at 4.)

## III. STANDARDS OF REVIEW

### A. Judgment as a Matter of Law

"In [the Sixth Circuit], a federal court sitting in diversity must apply the standard for judgments as a matter of law of the state whose substantive law governs." DXS, Inc. v. Siemens Med. Sys., Inc., 100 F.3d 462, 468 & n.4 (6th Cir.1996) (explaining that "a motion for directed verdict is now referred to as a motion for judgment as a matter of law"); see also J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1482 (6th Cir.1991) (holding that "[i]n federal court diversity cases, ... state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict.")

Under Tennessee law, the reviewing court must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be draw[n] from the whole evidence."

Stinson v. Crye–Leike, Inc., 198 Fed.Appx. 512, 515 (6th Cir.2006) (alteration in original) (quoting Arms v. State Farm Fire & Cas. Co., 731 F.2d 1245, 1248 (6th Cir. 1984)). Judgment as a matter of law should be granted "only if reasonable minds could draw but, one conclusion." Sauls v. Evans, 635 S.W.2d 377, 379 (Tenn.1982).

### B. Certification of Questions of Law to the Tennessee Supreme Court

The Tennessee Supreme Court Rules permit the Tennessee Supreme Court to, "at its discretion, answer questions of law certified to it by ... a District Court of the United States in Tennessee." Tenn. Sup. Ct. R. 23, § 1. The Tennessee Supreme Court may do so "when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Id. A question of law is "determinative of the cause" if it is claim-dispositive. Becker v. Ford Motor Co., No. 1:13–cv–276–SKL, 2013 WL 6046080, at *2 (E.D.Tenn. Nov. 13, 2013).

The certification of questions "is most appropriate when the question is new and state law is unsettled." BKB Props., LLC v. SunTrust Bank, 453 Fed.Appx. 582, 588 (6th Cir.2011) (quoting Transamerica Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (6th Cir.1995)). "When [the certifying court] see[s] a reasonably clear and principled course," it will forgo certification and address the issue itself. Id. (quoting Pennington v. State Farm Mut.

Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir.2009)).

## IV. ANALYSIS

Defendant argues that it is entitled to judgment as a matter of law on the basis that Plaintiff did not offer a "legally sufficient evidentiary basis" for claims of statutory bad faith and punitive damages at trial. (ECF No. 158 at 1–2.) The Court addresses each of these claims in turn.

### A. Statutory Bad Faith

Defendant asserts that "Plaintiff failed to establish that each of [Defendant]'s grounds for questioning her entitlement to the Policy proceeds was unreasonable." (Id. at 1.) Plaintiff argues that "the trial was replete with evidence of [Defendant]'s inaction and indifference ... in refusing to pay her the death benefit." (ECF No. 159 at 11.) The Court agrees with Plaintiff that the evidence of Defendant's actions during the course of its dealings with Plaintiff involving Decedent's life insurance proceeds creates doubt as to whether Defendant acted in good faith.

The Tennessee Code provides that the statutory penalty for bad faith by an insurer refusing to pay is, "in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss." Tenn. Code Ann. § 56–7–105(a). There are four elements a plaintiff must satisfy to prevail on a claim for statutory bad faith.[1] The parties dispute only whether Defendant's refusal to pay was not in good faith. (See Joint Pretrial Order at 5.) To show bad faith, a plaintiff must prove "facts that tend to

show 'a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability.'" Johnson v. Tenn. Farmers Mut. Ins. Co., 205 S.W.3d 365, 370 (Tenn.2006) (quoting Goings v. Aetna Cas. & Sur. Co., 491 S.W.2d 847, 849 (Tenn.Ct.App.1972)). An insurer's duty to act in good faith is discharged when it "exercise[s] ordinary care and diligence in investigating the claim." Id.

The insurer "is entitled to rely upon available defenses and refuse payment if there [are] substantial legal grounds that the policy does not afford coverage for the alleged loss." Ginn v. Am. Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn.Ct.App.2004) (quoting Sisk v. Valley Forge Ins. Co., 640 S.W.2d 844, 852 (Tenn. Ct.App.1982)). "The jury's verdict awarding a bad faith penalty can be set aside only if there is no material evidence to support it." Id.

In this case, Defendant asserts that it considered two bases for questioning Plaintiff's entitlement to the proceeds: "(1) the waiver provision in the martial [sic] dissolution agreement, and (2) the insurance provision of the marital dissolution agreement by which Mr. Lindenberg agreed to provide insurance coverage for his children as irrevocable beneficiaries." (ECF No. 158 at 3.) Defendant asserts that "[i]f either of these bases is valid or was asserted in good faith," then its motion for judgment as a matter of law must be granted. (Id.) The Court evaluates each

---

1. To prevail on a claim for statutory bad faith, the Plaintiff must show: (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before

filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

Palmer v. Nationwide Mut. Fire Ins. Co., 723 S.W.2d 124, 126 (Tenn.Ct.App.1986).

of these bases as if it had been asserted independently. "[I]f an insurer asserts a defense in good faith, the bad faith penalty may not be imposed even if the defense is unsuccessful." Fulton Bellows, LLC v. Fed. Ins. Co., 662 F.Supp.2d 976, 996 (E.D.Tenn.2009) (quoting Sowards v. Grange Mut. Ins. Cas. Co., No. 3:07–cv–0354, 2008 WL 3164523, at *8 (M.D.Tenn. Aug. 4, 2008)); see also State Auto. Mut. Ins. Co. v. R.H.L., Inc., No. 07–1197, 2010 WL 909073, at *16 (W.D.Tenn. Mar. 12, 2010).

### 1. Waiver Provision of the MDA

 ˙ Defendant asserts that the waiver provision of the marital dissolution agreement called into question Plaintiff's entitlement to the proceeds. The waiver provision, however, states that "[e]xcept for the terms and provisions of this Marital Dissolution Agreement, both parties waive and repudiate all right, title, and interest ... in and to the property and estate of the other including ... insurance." (Trial Ex. 10 at 2 (emphasis added).) Defendant's reliance on the waiver provision as a grounds for questioning who should be paid the proceeds is not valid because the waiver provision itself stated that it was secondary to other terms and provisions of the agreement. Since the agreement also contained a life insurance provision (see id. at 9–11), the parties' waiver of rights did not govern who Decedent's beneficiaries were in light of the divorce.

Jennifer Trumpie, Defendant's customer relations representative, despite being a non-lawyer, concluded that it was unclear whether "the [Defendant's] policy is the policy Mr. Lindenberg was required to maintain with the children as beneficiaries." (Trial Ex. 23 at 1; see also Trial Tr. 13:3–6, Dec. 17, 2014.) Trumpie also concluded that, if Defendant's policy was not the one Decedent was required to maintain and Plaintiff Tamarin Lindenberg was indeed the designated beneficiary, then

Plaintiff had waived her status as beneficiary in the MDA. (Trial Ex. 23 at 1.) Even if this had been accurate, Defendant did not then proceed with ordinary care and diligence in investigating other potential claims, particularly that of Decedent's adult daughter Mary Angela Lindenberg Williams, who was an alleged potentially adverse claimant. (Trial Tr. vol. 1, 222:17–19, Dec. 16, 2014; Trial Tr., 42:16–23, Dec. 17, 2014.) Defendant's own insurance industry opinion witness, Robert Adams, testified that it was routine to contact potentially adverse claimants during an initial claim investigation. (Trial Tr. afternoon, 424:4–11, Dec. 18, 2014.) Accordingly, the Court does not find that the only conclusion to be drawn from the evidence is that the waiver provision constituted a "substantial legal ground" for refusing payment and that Defendant acted in good faith when it believed that the provision did. Defendant is not entitled to judgment as a matter of law on this basis.

### 2. Life Insurance Provision of the MDA

 Defendant's other asserted basis for questioning to whom the proceeds should be paid is the life insurance provision of the MDA. While Defendant does not dispute that Plaintiff was the primary beneficiary of the policy at issue, Defendant argues that its refusal to pay was based on the possibility of multiple liabilities on the policy, which would have required Defendant to pay the policy proceeds to both Plaintiff and her children. (ECF No. 158 at 8.) The question of whether Defendant acted in good faith in withholding payment of the death benefit to Plaintiff was submitted to the jury, which decided in Plaintiff's favor. (See Verdict Form at PageID 2016, ECF No. 151.) Defendant argues that the jury verdict should be reversed because the jury failed to separate a defense to the breach

of contract claim from the motivation for asserting that defense when it considered the bad faith claim. (ECF No. 158 at 8.)

The Court finds that the proof offered at trial does not support Defendant's assertion that it acted in good faith when it refused to pay Decedent's death benefit. Plaintiff's opinion witness, Aubrey Brown, a Tennessee family law attorney, testified that there was no risk to Defendant of multiple liabilities because Defendant was obligated to pay only the designated primary beneficiary of the policy—Plaintiff—and any cause of action based on the children's entitlement to the proceeds would have been against Decedent's estate or Plaintiff, not Defendant. (Trial Tr., 293:21–294:6, 303:21–304:12, Dec. 17, 2014.) Defendant did not present testimony to contradict these assertions. Plaintiff's former attorney, Tom Maschmayer, also testified that although Defendant was offered a hold harmless and indemnification agreement to further shield Defendant from the liability it feared, Defendant's in-house counsel, Nathan Maas, rejected the agreement. (Id. at 229:3–230:6.)

Defendant asserted at trial that it had specific concerns about the children's claims and thus, required waivers of the children's rights before paying the death benefit. (See, e.g., id. at 174:6–175:1.) Defendant's insistence on receiving waivers from the children, however, is inconsistent with its own actions. First, Plaintiff testified that approximately two months after Decedent's death, she offered to have two guardians act on behalf of her minor children, yet Trumpie rejected the offer. (Trial Tr. afternoon, 232:20–233:6, Dec. 18, 2014.) Defendant also stipulated that it had no standard company policy pertaining to requiring guardianships and decides claims where guardianships may be implicated on a case-by-case basis. (Stipulation No. 6(i), Joint Pretrial Order at 4.) Second, in October 2013, after Plaintiff filed suit, Defen-dant agreed to the appointment of the same guardians it had rejected approximately seven months earlier and filed a joint motion with Plaintiff to appoint the guardians in December 2013. (Trial Tr. afternoon, 233:9–17, Dec. 18, 2014; Joint Mot. to Appoint James and Kimberly Griffith As Guardians Ad Litem, Trial Ex. 13.) Third, Defendant was willing to pay Decedent's adult daughter part of the death benefit even though she had not asserted a claim to it. (See Trial Ex. 23 at 2 (indicating that Defendant would pay "contingent beneficiaries [who] are 'Surviving Children Equally' " if Plaintiff waived her rights).) These actions suggest that Defendant's concern about multiple liabilities and the children's interests, which it asserts justified its refusal to pay, was pretextual.

There is further evidence that Defendant acted in bad faith because it did not exercise ordinary care and diligence in handling Plaintiff's claim. Defendant stipulated "that there were not a manager in its claims department that was specifically tasked with managing and overseeing the day-to-day activities of [Plaintiff's] claim." (Stipulation No. 6(j), Joint Pretrial Order at 4.) Plaintiff's file was closed on the same day Trumpie wrote a letter to Plaintiff explaining why Defendant was refusing to pay the death benefit. (Trial Tr. vol. 1, 298:4–6, Dec. 16, 2014.) Plaintiff's claim was then handled by Maas who never sent the waivers requested by Plaintiff and her counsel (Trial Tr., 95:1–4, Dec. 17, 2014); and was out of the office on work days between February and August 2013 because of his ongoing personal bankruptcy case (id. at 112:1–5; see generally id. at 95–100).

In addition, Plaintiff presented evidence at trial that Defendant intentionally ignored Plaintiff's interests to avoid full liability. Over the course of Plaintiff's phone calls to Defendant in February and March

2013, Defendant was made aware of Plaintiff's limited finances (see, e.g., Trial Tr. afternoon, 206:20–22, Dec. 18, 2014; Trial Tr. 61:23–25, Dec. 22, 2014; see generally Trial Ex. 38), yet still required her to engage in the guardianship process detailed in the letter to Plaintiff before it would pay proceeds to her (Trial Ex. 23; see also Trial Tr. 54:13–21, Dec. 22, 2014; Trial Exs. 25, 26, 32). Scott Peatross, a probate attorney and the public administrator of Shelby County, was called by Defendant and testified that the process would have likely entailed hiring two attorneys, one to file a petition in court to establish guardianships for the minor children, and another to serve as guardian. (Trial Tr. vol. 1, 22:15–23:7, Dec. 19, 2014.) Trumpie and Maas admitted, however, that no contract terms required Plaintiff to take such action (Trial Tr., 54:13–18, 188:24–189:3, Dec. 17, 2014;), and Maschmeyer and Brown testified that the process would not have been viable anyway as a mechanism for Plaintiff to receive the death benefit (Trial Tr., 232:7–13, 305:10–308:2, Dec. 17, 2014). Although the significant cost to a plaintiff is not alone grounds for a finding of bad faith, Sisk, 640 S.W.2d at 852, requiring Plaintiff to participate in an unnecessary process while having knowledge of the financial burden on her demonstrates Defendant's intentional disregard of Plaintiff's interests and, therefore, its bad faith in refusing to pay.

Accordingly, the Court does not find that the only conclusion to be drawn from the evidence is that the life insurance provision constituted a "substantial legal ground" for refusing payment and that Defendant acted in good faith when it believed that the provision did. Defendant is not entitled to judgment as a matter of law on this basis.

As there is doubt as to Defendant's conclusion that it acted in good faith in light of the waiver and life insurance provisions of the MDA, the Court DENIES Defendant's motion for judgment as a matter of law with regards to the statutory bad faith claim.

## B. Damages

Defendant also seeks judgment as a matter of law on the issue of punitive damages. Defendant asserts that Plaintiff cannot recover the $3,000,000 in punitive damages awarded by the jury because Plaintiff failed to prove actual damages. (ECF No. 158 at 10–14; see Special Verdict Form, ECF No. 152.) In the alternative, Defendant argues that the Tennessee punitive damages cap applies in this case and would entitle Plaintiff a maximum of $500,000. (ECF No. 158 at 15–19.) Plaintiff argues that actual damages were proven; the punitive damages award is not subject to the statutory cap; and even if the cap were applicable and constitutional, Plaintiff would be entitled to $700,000. (ECF No. 159 at 2–6, 20 & n.11.) Plaintiff also seeks to certify questions of law to the Tennessee Supreme Court regarding the constitutionality of the statutory damages cap. (See ECF No. 167.)

It is undisputed that actual damages must first be established before punitive damages can be awarded. (See ECF No. 158 at 11; ECF No. 159 at 4.) The Court addresses the actual damages and punitive damages questions in turn.

### 1. Actual Damages

Defendant argues that no actual damages arise from Plaintiff's breach of contract claim because Defendant paid the death benefit "in full prior to trial." (ECF No. 158 at 13.) Plaintiff argues that the damages must be measured at time of breach, not time of trial. (ECF No. 159 at 3.) The Court finds that damages are measured at time of breach and that the predicate of actual damages in this case

satisfies the initial requirement for punitive damages.

"The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed . . . ." BVT Lebanon Shopping Ctr., Ltd. v. Wal–Mart Stores, Inc., 48 S.W.3d 132, 136 (Tenn.2001) (quoting Lamons v. Chamberlain, 909 S.W.2d 795, 801 (Tenn.Ct.App. 1993)). In Tennessee, "[t]he recovery in an action at law for the breach of the contract in failing to deliver the policy, would be its money value at the time of breach, with interest, if the jury see proper to give interest." Nashville Life Ins. Co. v. Mathews, 76 Tenn. 499, 507 (1881) (emphasis added); see also BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 231 (Tenn.Ct. App.2006) (holding that damages for breach of contract for real estate depend on value at the time of breach); First Tenn. Bank Nat. Ass'n v. Hurd Lock & Mfg. Co., 816 S.W.2d 38, 42 (Tenn.Ct.App. 1991) (recognizing principle of measuring damages at time of breach of contract for goods). Other circuits applying other states' laws have also held that "contract damages are measured at the time of breach." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007); Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 154 (5th Cir.2004).

The case law Defendant cites to assert that damages are measured at the time of trial is unpersuasive. While the Supreme Court of Tennessee held in Whittington v. Grand Valley Lakes, Inc. that the respondent had already compensated the petitioner for losses stemming from the respondent's trespass, thereby eliminating the petitioner's actual damages, the court still found that there was a predicate of actual damages that supported an award for punitive damages. 547 S.W.2d 241, 242–43 (Tenn.1977). Indeed, the court negated the jury verdict for actual damages but upheld the jury verdict for punitive damages. Id. The court reasoned that the

> [respondent] recognized its liability and pre-paid it . . . . Surely, had [the respondent] not [done so] and the landowner had restored [the land] at her own expense, there would be a predicate of actual damages and an award of punitive damages would be soundly based. In legal effect, we see no difference.

Id. at 243.

In this case, had Defendant not paid Plaintiff the death benefit before trial—which it did only after the Court ordered it to do so (see Stipulation No. 6(k), Joint Pretrial Order at 4)—the benefit would have been the predicate of actual damages Plaintiff sought, and Plaintiff would be entitled to punitive damages. Should Defendant succeed on this issue, Plaintiff would be placed in a worse position simply because Defendant ultimately acquiesced to the Court's order after over a year of delaying its payment obligation.

Although Defendant uses Whittington to support its argument that actual damages should be calculated at the time of trial, Defendant must also distinguish the instant matter from Whittington on the issue of allowing punitive damages in light of complete compensation to a plaintiff before trial. Defendant argues that the defendant in Whittington did not have a valid defense for its tortious acts while Defendant in this case acted in good faith when questioning to whom the proceeds should be paid. (ECF No. 158 at 13–14.) Defendant also argues that Whittington is a case that predates statutory punitive damages caps in Tennessee and only involved a small amount of damages. (Id. at 14.) Plaintiff argues that Whittington is still binding: "[Defendant's] arguments . . . [render] the doctrines of stare decisis and nominal damages . . . nullities." (ECF No. 159 at 5

n.3.) The Court first disagrees that Defendant has a valid defense for its refusal to pay the death benefit, see supra Part IV.A, and also disagrees that Whittington is no longer good law. Defendant cannot logically use the case to support one of its assertions and then reject the same case as irrelevant in light of statutory changes.

 Defendant relies additionally on Custom Built Homes v. G.S. Hinsen Co., a case in which the ·defendant's breach· of contract did not cause the plaintiff actual injury because a third-party had already satisfied its contract with the plaintiff, making the plaintiff whole and ineligible for actual damages. (ECF No. 158 at 12–13 (citing No. 01A01–9511–CV–00513, 1998 WL 960287 (Tenn.Ct.App. Feb. 6, 1998)).) The Court agrees with Plaintiff that this case is merely persuasive and not precedential, and also that it is distinguishable from the instant matter because Plaintiff was not made whole by a third-party before trial in spite of Defendant's breach. (See ECF No. 159 at 5.) Although Defendant argues that Plaintiff has been made whole because it has paid Plaintiff the value of the contract plus interest, the Court does not find Plaintiff ineligible for actual damages. To hold that a defendant may escape punitive damages liability for a breach of contract as long as it performs wholly before trial not only goes against the rule of measuring damages at the time of breach but would also contravene the deterrent and retributory effect of punitive damages. Since the Court finds that Plaintiff's actual damages are calculated at the time of breach, and thus, the then-unpaid proceeds of the life insurance policy were the actual damages, Plaintiff is eligible for punitive damages.

### 2. Punitive Damages

Defendant argues that punitive damages are inappropriate because (1) Plaintiff failed to prove statutory bad faith at trial; (2) Plaintiff failed to establish Defendant acted intentionally, fraudulently, maliciously or recklessly; and (3) Plaintiff did not suffer actual damages from breach of contract. (ECF No. 158 at 15.) The Court is not persuaded by Defendant's arguments and finds that Plaintiff is entitled to punitive damages.

First, the Court finds that Plaintiff sufficiently proved the elements of statutory bad faith at trial. See supra Part IV.A. Second, the Court finds that while Plaintiff did not establish at trial that Defendant acted fraudulently, Plaintiff did establish at trial that Defendant acted at least recklessly when it failed to pay the death benefit to Plaintiff.

 A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the [ordinary] standard of care . . . .

Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn.1992) (citation omitted). To succeed on a claim for fraud, Plaintiff must prove fraud with particularity. Fed. R. Civ. P. 9(b).

Plaintiff did not properly plead fraud at trial, and even if she had done so, she failed to present evidence at trial that Defendant intentionally made misrepresentations to Plaintiff in order to mislead her and benefit itself. Plaintiff, however, established recklessness on the part of Defendant: Plaintiff presented evidence that De-

fendant was aware of Plaintiff's financial situation, yet consciously disregarded it by inadequately investigating her claim and requiring her to undertake unnecessary actions like the appointment of guardians for her minor children before paying out the proceeds. See supra Part IV.A.2. Third, there exists a predicate for actual damages, which enables Plaintiff to recover punitive damages. See supra Part IV.B.1. For these reasons, the Court DENIES Defendant's motion for judgment as a matter of law with regards to the punitive damages claim.

### 3. Tennessee Statutory Damages Cap

■■■ The Court defers ruling on the amount of punitive damages to which Plaintiff is entitled because there is an outstanding issue of whether the Tennessee statutory damages cap is constitutional. Plaintiff submits that the Court should certify two questions of law to the Tennessee Supreme Court:

(1) Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated § 29–39–104 [2] violate a plaintiff's right to a trial by jury, as guaranteed in Article I, section 6 of the Tennessee Constitution?

(2) Do the punitive damages caps in civil cases imposed by Tennessee Code Annotated § 29–39–104 represent an impermissible encroachment by the legislature on the powers vested exclusively in the judiciary, thereby violating the separa-

tion of powers provisions of the Tennessee Constitution?

(ECF No. 167 at 2.)

The certification of these questions is appropriate at this stage because they are determinative of the cause and because there are no Tennessee Supreme Court decisions that control. See Tenn. Sup. Ct. R. 23, § 1. Both Defendant and the State of Tennessee opposed Plaintiff's Motion to Certify Questions because it was not yet clear whether the punitive damages cap would need to be applied. See ECF No. 174 at 4–6; ECF No. 178 at 4. Now that the Court has decided that punitive damages are warranted, see supra Part IV.B.2, the issue is ripe for certification. The State acknowledges that "[n]either the Tennessee Supreme Court nor any other court in Tennessee has ruled on the constitutionality of" the statutory damages cap.[3] (ECF No. 178 at 5.) Thus, the questions are new and state law on the particular statute at issue is unsettled. "The constitutional questions are significant and will ultimately need to be decided by the Tennessee Supreme Court." (Id.)

The Court is unpersuaded by Defendant's argument that certification is not warranted because there is a " 'clear and principled' course" for the Court to follow. (ECF No. 174 at 6 (quoting Pennington, 553 F.3d at 450).) For example, Defendant analogizes to a North Carolina Supreme Court case that supports the constitutionality of a cap on punitive damages. (Id. at 10–12 (citing Rhyne v. K–Mart Corp., 358

---

**2.** Section 29–39–104 of the Tennessee Code imposes a cap on punitive damages: they "shall not exceed an amount equal to the greater of: (A) Two (2) times the total amount of compensatory damages awarded; or (B) Five hundred thousand dollars ($500,000)." Tenn. Code Ann. § 29–39–104(a)(5).

**3.** Plaintiff cites a Tennessee trial court opinion, Clark v. Cain, in which the Hamilton

County Circuit Court held that the statutory cap on non-economic damages is unconstitutional. (ECF No. 168 at 3 (citing No. 12–C1147, 2015 WL 1137546 (Tenn.Cir.Ct. Hamilton Cnty. Mar. 9, 2015) (mem. op.), ECF No. 168–1).) Clark, however, addresses the statutory cap under section 29–39–102 of the Tennessee Code, not the section at issue in this case, section 29–39–104. (See Clark, No. 12–C1147, 2015 WL 1137546, at 2.)

N.C. 160, 594 S.E.2d 1 (2004)).) The North Carolina Supreme Court held that the state's statutory punitive damages cap did not violate the state constitutional right to a jury trial "because plaintiffs lacked a fundamental right to a judgment that was consistent with the jury's punitive award." (Id. at 12.) Plaintiff points to rulings from the Missouri and Ohio Supreme Courts, however, which have held that statutory punitive damages caps do violate a plaintiff's fundamental right to a jury trial. (ECF No. 168 at 6 (citing Lewellen v. Franklin, 441 S.W.3d 136, 143 (Mo.2014) (en banc); State ex rel. Ohio Acad. of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062, 1091 (1999) ("a statute that allows the jury to determine the amount of punitive damages to be awarded but denies the litigant the benefit of that determination stands on no better constitutional footing than one that precludes the jury from making the determination in the first instance")).) It does not appear, then, that there is a clear and principled course for the Court to follow in rejecting Plaintiff's constitutional challenges that would justify a denial of certification to the Tennessee Supreme Court.

Accordingly, the Court GRANTS Plaintiff's Motion for Certification of Questions to the Tennessee Supreme Court.

## V. CONCLUSION

The Court applies the standard for granting motions for judgment as a matter of law under Tennessee law and finds that, taking the evidence in the strongest view in favor of Plaintiff, the non-movant, there is doubt as to the conclusions drawn by Defendant. Thus, Defendant's Motion for Judgment as a Matter of Law is DENIED. The Court also finds that the constitutionality of the Tennessee statutory damages cap is an issue now ripe and appropriate for review and GRANTS Plaintiff's motion to certify questions regarding the constitutionality of the cap to the Tennessee Supreme Court. The Court will enter a separate order of certification.

**IT IS SO ORDERED,** this 24th day of November, 2015.